**Douglas GROSS, Plaintiff,**

v.

**J. LUNDUSKI, Defendant.**

**No. 12–CV–1221S (F).**

United States District Court,
W.D. New York.

Signed Dec. 18, 2014.

Prisoners' Legal Services of New York, Betsy Hutchings, Kristina A. Moon, of Counsel, Ithaca, NY, Attorneys for Plaintiff.

Eric T. Schneiderman, Attorney General of the State of New York, Kathleen M. Kaczor, Assistant Attorney General, of Counsel Buffalo, NY, Attorney for Defendant.

## DECISION and ORDER

LESLIE G. FOSCHIO, United States Magistrate Judge.

## JURISDICTION

This action was referred to the undersigned by Hon. William M. Skretny by order filed July 30, 2014 (Doc. No. 30). It is pres-

ently before the court on Plaintiff's motion to compel, filed May 7, 2014 (Doc. No. 20) ("Plaintiff's motion") and Defendant's motion, filed June 30, 2014 (Doc. No. 25), for a protective order ("Defendant's motion").

## BACKGROUND and FACTS [1]

In this prisoner civil rights action, Plaintiff alleges Defendant assaulted him in violation of Plaintiff's Eighth and Fourteenth Amendments rights. Specifically, Plaintiff claims that Defendant, a corrections officer, without provocation by Plaintiff, grabbed and squeezed Plaintiff's genitals and struck a blow to the right side of Plaintiff's head while Plaintiff was seeking to use the lavatory at the Five Points Correctional Facility ("Five Points" or "the facility") in Romulus, New York, where Plaintiff was housed. According to Plaintiff, Plaintiff had received permission from the teacher of a GED class being conducted at the facility on August 4, 2011, to use the lavatory but was stopped by Defendant despite Plaintiff informing Defendant he had such permission. Plaintiff alleges that following Plaintiff's return to the classroom to advise the teacher of Defendant's refusal, the teacher stepped out of the classroom into the adjacent hallway area and confirmed to Defendant that she had granted such permission to Plaintiff.[2] Plaintiff alleges that after the teacher returned to the classroom and as Plaintiff attempted to walk to the lavatory, Defendant immediately assaulted Plaintiff to retaliate against Plaintiff because Plaintiff had challenged Defendant's authority by bringing to the teacher's attention Defendant's refusal to allow Plaintiff to use the lavatory, and Defendant was angered by Plaintiff's attempt to supersede his authority by obtaining the teacher's permission. So far as is known, other than the parties, there are no other witnesses to the encounter and no surveillance cameras recorded the incident. Plaintiff alleges that as a result of Defendant's assault, Plaintiff suffered a concussion, a ruptured ear drum and a lingering injury to his testicles as well as severe pain. Following the alleged assault, Plaintiff was taken to the prison infirmary approximately 15 minutes later on a stretcher crying hysterically. The record shows that four hours later Plaintiff returned to the infirmary in pain where medical staff at the infirmary confirmed Plaintiff had suffered a right ear drum rupture. Declaration of Kathleen C. Kaczor, filed June 30, 2014, ("Kaczor Declaration") (Doc. No. 25-1), Exh. D at 0002. Defendant's version of the event differs markedly, as Defendant claims Plaintiff's injuries occurred when Plaintiff fell to the floor from a seated position on a bench in the hallway, feigning hysterical outbursts related to Plaintiff's diabetic condition. Affirmation of Kristina Moon, Esq., filed May 7, 2014, (Doc. No. 21) ("Moon Declaration") Exh. 1. Oral argument was conducted July 31, 2014 (Doc. No. 31).

Remaining at issue on Plaintiff's motion[3] are Plaintiff's requests for (1) document production relating to any Defendant's similar misconduct, (2) an audible copy of the audio recording of Plaintiff's Tier II hearing regarding the adjudication of disciplinary charges Defendant filed against Plaintiff in connection with the incident, (3) a to-scale drawing of the bench from which Defendant asserts Plaintiff fell, (4) a court direction that depositions for the key fact witnesses, employees of the N.Y. Department of Correctional and Community Services, Defendant's employer ("DOCCS"), at Five Points, be con-

---

1. Taken from the pleadings and papers filed in connection with Plaintiff's motion.

2. The Complaint does not specifically allege the teacher had authority to grant such permission, however, neither does Defendant specifically deny that the teacher had such authority.

3. By letter dated August 8, 2014 (Doc. No. 34), Defendant has agreed to provide Plaintiff with a copy of the Five Points School Building to-scale survey or building drawing of the relevant areas of the facility including photos of the relevant bench, subject to a Confidentiality Stipulation between the parties. Plaintiff has not rejected this offer to date and the court therefore assumes that as to Plaintiff's request for this information, Plaintiff's motion is moot, and Plaintiff's request will therefore not be addressed. Additionally, while Defendant opposed Plaintiff's request for Defendant's personnel file, Plaintiff's Memorandum of Law, Filed May 7, 2014 (Doc. No. 22) ("Plaintiff's Memorandum") at 9–12, Defendant has submitted Defendant's personnel file for *in camera* review. At Defendant's request, these documents have been filed under seal (Doc. No. 42).

ducted at a mutually convenient location outside the facility to avoid potential disruption and undue influences, and (5) attorneys fees incurred in connection with Plaintiff's motion as a sanction.

Defendant's motion requests the court enter a protective order against Plaintiff's discovery requests, specifically directed to Plaintiff's request for prior and subsequent excessive force complaints by prison inmates against Defendant including those contained in DOCCS's Inspector General's ("IG") investigative files, Bureau of Labor Relations ("BLR") files, and prisoner grievances ("grievances") on the grounds that Plaintiff's requests seek documents over which Defendant has no possession, custody or control, lack relevancy, are unduly burdensome and, as to Plaintiff's request for inmate grievances, that Plaintiff failed to include this request in Plaintiff's document request served pursuant to Fed.R.Civ.P. 34(a) ("Rule 34(a)"). Defendant further seeks an order quashing Plaintiff's requests for Defendant's mental health treatment records and access to the original tape recording of Plaintiff's disciplinary hearing in order to avoid potential loss of the original tape and because this latter request was also not included in a formal Rule 34(a) request prior to Plaintiff's motion.

## DISCUSSION

### 1. *Plaintiff's Document Requests*

(a) *Defendant's Personnel File.*

■ Plaintiff contends Defendant's personnel file may contain material that could be used to impeach Defendant based on violations of work rules, fraudulent claims, poor performance evaluations and potential mental health issues. Defendant produced Defendant's personnel file for *in camera* review on June 30, 2014, Kaczor Declaration ¶ 77; Defendant's Memorandum of Law filed June 20, 2014 ("Defendant's Memorandum") (Doc. No. 25–6) at 16. Plaintiff requests Plaintiff be provided with any information the court may find relevant to Defendant's credibility and job performance from its review of Defendant's personnel file. Plaintiff's Reply Memorandum, filed July 15,

2014, (Doc. No. 27) ("Plaintiff's Reply Memorandum") at 8. Although Plaintiff is required to make a "clear showing of facts" to warrant *in camera* review of a defendant's personnel file, *Ortiz v. Twedt*, 2004 WL 941790, at *5 (W.D.N.Y. Mar. 31, 2004), Defendant has, as noted, without insisting on such a showing, submitted Defendant's personnel file for *in camera* review. *See Ortiz v. Twedt*, 2004 WL 941790, at *5 (W.D.N.Y. Mar. 31, 2004) (court should review personnel file of defendant corrections officer to cull out relevant material and protect privacy interests of defendant). Accordingly, the court has carefully reviewed each item included in Defendant's personnel file and finds limited material subject to production, as requested by Plaintiff, that may reasonably bear on Defendant's credibility, specifically (1) Defendant's performance evaluation while at Five Points for the period December 27, 2011 to December 27, 2012 dealing with issues of Defendant's compliance with DOCCS time and attendance regulations, and (2) several memoranda dated October 6, 2010, June 16, 2010, March 23, 2010, February 10, 2010, December 1, 2009, June 8, 2008 and February 27, 2009, relating to issues of Defendant's work attendance. Except for these documents, which shall be produced to Plaintiff **within 14 days** of this Decision and Order, subject to the parties' Confidentiality Stipulation, the court's review finds nothing relevant is included in Defendant's personnel file subject to production. Plaintiff's motion with respect to Plaintiff's request for inspection of Defendant's personnel file and production of relevant material is therefore GRANTED.

(b) *DOCCS Inspector General Reports, Bureau of Labor Relations, Use of Force Reports, Unusual Incident Reports and Inmate Grievances.*

Plaintiff's requests for production of these documents include all files of the DOCCS Inspector General ("the IG") and the DOCCS Bureau of Labor Relations ("BLR") relating to investigations of Defendant by the IG and the BLR involving conduct similar, *i.e.*, excessive force, to that alleged by Plaintiff in this case or in which Defendant made any

statements to IG investigators concerning the investigation of another person, Use of Force Reports and Unusual Incident Reports ("UIR") involving Defendant, and inmate grievances against Defendant involving inmate complaints also similar to that alleged by Plaintiff. Although Defendant has provided the IG Report relating to the IG investigation of Plaintiff's claim in this case, Moon Declaration ¶ 19, Defendant has refused production responsive to Plaintiff's other requests. Specifically, Defendant refuses to provide IG files and reports involving Defendant either as the object of an IG investigation for excessive force by Defendant or as a witness submitting a statement in connection with any IG investigation other than as to the instant incident. Defendant also objects to Plaintiff's request to produce inmate grievances and the original tape recording of Plaintiff's Tier II disciplinary hearing because these items were not formally included in Plaintiff's discovery requests. *See* Defendant's Memorandum at 3 n. 5 (citing *Brown v. Chappius*, 2014 WL 1795015 at \*\*5–6 (W.D.N.Y. May 6, 2014)). Plaintiff has recently withdrawn his request for BLR files based on the Declaration of John A. Shipley, Director of the BLR, explaining that retrieval of BLR files is possible only based on the name of an employee who was in fact disciplined, and that Plaintiff accepts Defendant's representation that he has not been disciplined thereby rendering it unlikely that Defendant can produce any BLR file pertaining to Defendant within the scope of Plaintiff's request. Plaintiff's Supplemental Memorandum of Law, filed September 17, 2014 (Doc. No. 40) ("Plaintiff's Supplemental Memorandum"), at 10–11 (referencing Doc. No. 39–2, ¶¶ 2–3 attached to Defendant's Memorandum of Law in Further Support of Defendant's Motion for a Protective Order filed September 12, 2014 ("Defendant's Memorandum in Further Support")). Plaintiff's request for BLR files regarding Defendant therefore will not be further addressed. Further, while Plaintiff initially requested IG files, including IG reports, BLR files and inmate grievances against Defendant, covering Defendant's 20–year period of employment, Plaintiff has since limited his request for IG files for the past 15 years, has limited Plaintiff's request for grievances to those coded as involving Staff Conduct during the preceding four years, Letter to Court from Kristina Moon, Plaintiff's attorney, dated August 29, 2014, filed September 3, 2014, Doc. No. 36 at n. 1 ("August 29, 2014 Moon Letter"), and has withdrawn Plaintiff's request for Use of Force Reports subject to production of the requested grievances related to Defendant. Plaintiff's Reply Memorandum at 7.

Plaintiff's papers are unclear as to the scope of Plaintiff's request for Unusual Incident Reports. While Plaintiff requested all UIRs related to Defendant's use of force since Defendant commenced employment as a DOCCS corrections officer, Plaintiff's First Set of Requests For Production No. 7, served September 16, 2013, Exh. 2 to Moon Affirmation at 5, Plaintiff has withdrawn Plaintiff's request for Use of Force Reports. *See* Plaintiff's Reply Memorandum at 7. Plaintiff appears to indicate that like Plaintiff's Use of Force request, Plaintiff's IR request will be satisfied by production of the related IG reports. Letter of Kristina Moon, Esq. to Court filed September 3, 2014 (Doc. No. 36) at 3 (referring to UIRs "attached" to IG reports). Accordingly, the court presumes that Plaintiff's motion as to the UIRs will be satisfied if Plaintiff receives production of the requested IG reports together with "attached" UIRs.

### Possession, Custody or Control.

At the outset, Defendant objects to Plaintiff's remaining document requests, *i.e.*, the IG reports, and inmate grievances on the ground that Plaintiff has failed to demonstrate that the requested documents are within the Defendant's "possession, custody, or control," a prerequisite to compel production pursuant to Rule 34(a). Defendant's Memorandum at 5 (citing *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir.2007) (a "party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain" (citing Rule 34(a) and caselaw))). Defendant asserts such objection is particularly valid here as the disputed documents are within the exclusive possession, custody, and control of DOCCS, Defendant's employer, and because Plaintiff, represented by experienced counsel,

could obtain such documents pursuant to Fed.R.Civ.P. 45 ("Rule 45") through service of a subpoena *duces tecum* upon DOCCS. Defendant's Memorandum at 8 n. 4 (citing cases). According to Plaintiff, Defendant's objection in this case contrasts sharply with prior document production in numerous prisoner civil rights cases involving similar requests from DOCCS provided to plaintiffs in those cases by the same N.Y. Attorney General's office representing Defendant, Plaintiff's Memorandum at 7–8 (citing examples), as well as those DOCCS documents produced by Defendant in the instant action, all official DOCCS records over which Defendant could not have actual possession, custody or control, as stated in Defendant's objection. *Id.* at 5. Nevertheless, Defendant vigorously contends Defendant lacks possession, custody, or control over the requested documents, even asserting DOCCS's Eleventh Amendment immunity bars such discovery. *See* Declaration of Carol Bellamy, Director of DOCCS's Inmate Grievance Program, Doc. No. 25–4, filed June 30, 2014, ("Bellamy Declaration") ¶ 10 (Defendant has "no ability to search for or obtain grievances filed by inmates against him."), ¶ 10 (DOCCS is an "entity entitled to sovereign immunity from suit, including the . . . burdens of litigation"); Declaration of Joseph Lunduski filed June 30, 2014 (Doc. No. 25–5) ("I have no ability to produce any of the documents sought by plaintiff").

 According to Defendant, because the Attorney General's office representing Defendant has engaged, unsuccessfully, in extensive communications with DOCCS concerning Plaintiff's requests to obtain the requested documents, and DOCCS is unable to accommodate Plaintiff's requests, Defendant's Memorandum at 7–8, Defendant does not have possession, custody or control of such records. However, for purposes of Rule 34(a), whether a party subject to a document request can be compelled to comply depends on two preliminary questions: (1) assuming the requested documents exist, does the party have possession, custody or control over them, and (2) if the party has such possession, custody or control, can the party be compelled to conduct a reasonable search for and, if found, to produce the documents. Courts hold that even where a party,

as in a case such as this, lacks actual physical possession or custody of requested documents for purposes of Rule 34(a), such party may nevertheless be found to have *control* of the documents within Rule 34(a)'s scope of production if the party is legally entitled to the documents *or has the practical ability* to acquire the documents from a third-party, *see Wiwa v. Royal Dutch Petroleum Co.,* 2009 WL 529224, at *2 (S.D.N.Y. Feb. 17, 2009) (citing cases) a proposition with which Defendant agrees. *See* Defendant's Memorandum at 5 (party is subject to motion to compel "if a disclosing party has the legal *or practical ability to obtain the documents*") (underlining added). This court recently encountered and rejected an identical objection by a DOCCS employee-defendant, represented as here by the New York State Attorney General, in an unrelated prisoner civil rights retaliation case. *See Guillory v. Skelly,* 2014 WL 4542468, at **7–8 (W.D.N.Y. Sep't 11, 2014) (citing caselaw) (requiring production of employee names at facility and DOCCS correctional officer's training manuals). Whether a party has a sufficient degree of control over requested documents to constitute a practical ability to obtain the documents is a question of fact, *see Sigety v. Abrams,* 632 F.2d 969, 974 (2d Cir.1980) (inferring from undisputed facts that requested documents known to have been within petitioner's control remained in petitioner's control); *Alexander Interactive, Inc. v. Adorama, Inc.,* 2014 WL 61472, at *3 (S.D.N.Y. Jan. 16, 2014), as to which the requesting party has the burden. *See Alexander Interactive, Inc.,* 2014 WL 61472, at *3. Important factors to be considered in deciding whether a party has the practical ability to obtain access to documents in the possession of a non-party include "the existence of cooperative agreements . . . between the responding party and the non-party, the extent to which the non-party has an stake in the outcome of the litigation, and the non-party's history of cooperating with document requests." *Alexander Interactive, Inc.,* 2014 WL 61472, at *3 (citing cases). Here, the record establishes Defendant, through his attorney, an Assistant N.Y. Attorney General, provided by the local office of the New York Attorney Gener-

al, has the practical ability to acquire from DOCCS many of the documents requested by Plaintiff. For example, Defendant acknowledges repeated requests from Defendant's counsel to DOCCS for responsive documents requested by Plaintiff and the receipt of at least some of those requested documents that DOCCS was able to locate, Defendant's Memorandum at 7, such as the Inspector General's Report regarding Defendant's alleged assault on Plaintiff, the relevant Watch Commander's Log, infirmary logs, the facility's school building log books and attendance records, all official DOCCS records over which Defendant could not have physical possession, custody or actual control, Plaintiff's Memorandum at 5, facts not disputed by Defendant. In this case, the record thus demonstrates a degree of "close coordination," *McKesson Corporation v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999), between DOCCS and Defendant with respect to the defense of Plaintiff's claim sufficient to warrant finding that Defendant has the practical ability to acquire the documents tantamount to control for Rule 34(a) purposes. *Cf. Alexander Interactive, Inc.*, 2014 WL 61472, at *4 (absence of reasons to believe non-party would allow responding party access to requested documents, including lack of non-party's interest in outcome of the litigation or record of past cooperation with respect to document production, required finding that plaintiff lacked practical control over requested non-party documents).

Moreover, in contrast to the circumstances in *New York v. National Railroad Passenger Corp.*, 233 F.R.D. 259, 264–65 (N.D.N.Y. 2006), relied on by Defendant, Defendant's Memorandum at 6 n. 10, 9 n. 16, where the court declined to require one state agency to produce records held in another state office for lack of similar interests, missions or goals, here the interest of DOCCS in promoting the safety of inmates held for correctional objectives of incapacitation, punishment and rehabilitation is congruent with Defendant's responsibility as a DOCCS corrections officer to carry out these public objectives on behalf of DOCCS. That the Attorney General has chosen to defend Defendant demonstrates, irrespective of Eleventh Amendment

limitations on a district court's jurisdiction over civil actions seeking money damages brought against a state, Defendant's Memorandum at 11 ("the ... reality here is that DOCCS is vastly different from a private entity ... because it enjoys sovereign immunity from § 1983 suits [including] immunity from the ... burdens of pretrial discovery"), that the state, and thus DOCCS as a department thereof, has a substantial interest in the case. *See* N.Y. Exec. Law § 63[1] ("§ 63"). (Attorney General "shall ... defend all actions ... in which the state is interested."). Thus, DOCCS and Defendant's interests are sufficiently aligned and closely interrelated in this case to support a finding that in defending a prisoner's claim of excessive force, such as Plaintiff's claim, the Defendant has the "practical ability" to obtain documents held by DOCCS, although a non-party, as requested by Plaintiff. *See also Vigliotti v. Selsky*, 2013 WL 3354423, at *4 (W.D.N.Y. July 3, 2013) (where defendant represented by N.Y. Attorney General was held to have "sufficient nexus" to DOCCS to arrange for inspection pursuant to plaintiff's Rule 34(a) request, defendant's objection that defendant lacked possession, custody or control of facility to arrange for plaintiff's requested inspection rejected) (quoting *Afros S.P.A. v. Krauss–Maffei Corp.*, 113 F.R.D. 127, 129 (D.Del.1986)). The record therefore supports that Defendant and DOCCS have a common interest in this litigation and there exists a history of cooperation demonstrating DOCCS's willingness to produce documents required in the defense of a corrections officer, like Defendant, against a prisoner's excessive force claim.

This finding is also reinforced by the commonly known fact that, in this state, payments of settlements of claims against corrections officers in prisoner civil rights cases, within certain limits, are subject to approval by senior DOCCS officials and are made from DOCCS's departmental budget. Such settlements and payments are consistent with N.Y. Public Officers Law § 18.4(a) authorizing indemnification of state employees successfully sued for wrongful actions occurring within the scope of their employment. In this case, that the Attorney General has

elected to provide, pursuant to § 63, Defendant with a defense indicates that in the event Plaintiff succeeds on this action, Defendant will be entitled to such indemnification. These factors demonstrate a commonality of interest in defending claims such as Plaintiff's, in order to avoid any indemnification required by state law, or payment of any settlement from DOCCS's budget, rather than an arm's length relationship between Defendant and DOCCS that otherwise might bar Plaintiff's Rule 34(a) requests for DOCCS's documents. The obverse is also true. Although insisting that Plaintiff should seek the requested documents by subpoena pursuant to Fed.R.Civ.P. 45, Defendant's Memorandum at 5 (citing *Shcherbakovskiy*, 490 F.3d at 138), Defendant does not claim that he lacks an equivalent relationship with DOCCS that would, according to Defendant's theory, complicate the conduct of Defendant's defense. Specifically, if Defendant were to have need to obtain the same documents requested by Plaintiff for his defense, most assuredly it would not be necessary for Defendant to obtain them from DOCCS by subpoenas pursuant to Rule 45, a requirement Defendant argues should be imposed on Plaintiff. A simple request to DOCCS from the Attorney General on behalf of Defendant would, as it does routinely in these actions, suffice to achieve production of the requested documents.

The court therefore finds Defendant has the practical ability to access or obtain Plaintiff's requested documents from DOCCS demonstrating a sufficient degree of control over such documents to support an enforceable document request pursuant to Rule 34(a). Defendant's objection on this preliminary ground is, accordingly, without merit. The court thus turns to Defendant's remaining objections relating to Plaintiff's document requests based on relevancy and burdensomeness, and whether Defendant demonstrated that DOCCS has made a reasonable effort to locate and produce the documents remaining at issue, particularly, the requested IG files and inmate grievances.

### Relevance.

Defendant opposes Plaintiff's request for IG, UIR and grievance records relating to similar excessive force complaints against Defendant on the ground that only "substantiated" complaints of similar misconduct are considered relevant and subject to discovery under Fed.R.Civ.P. 26(b)(1) ("Rule 26(b)(1)") (discovery permitted for matter relevant to a claim or defense; admissibility not necessary if information sought "appears reasonably calculated to lead to the discovery of admissible evidence."). Defendant's Memorandum at 13. Defendant relies on several cases from this court. *Id.* at n. 13 (citing cases). It is true, as Defendant notes, that other members of this court have refused discovery requests seeking complaints of similar misconduct against corrections officer defendants in prisoner civil rights cases alleging excessive force if such complaints were unsubstantiated as, for example, where the complaints did not result in disciplinary action against the officers. *See, e.g., Wright v. Goord,* 2008 WL 2788287, at \*3 (W.D.N.Y. July 15, 2008) (limiting document production in excessive force case to documents relating to "disciplinary action taken against such defendants" and "investigations by the Inspector General of the named defendants for the use of excessive force."); *see also Mitchell v. Whitenight,* 2013 WL 5936978, at \*2 (W.D.N.Y. Nov. 4, 2013) (noting that production of documents showing discipline of local police officers for excessive use of force will be required but that records related to "unsubstantiated claims of excessive force are unlikely to lead to admissible evidence" generally not required to be produced (citing *Worthy v. City of Buffalo,* 2013 WL 5574624, at \*4 (W.D.N.Y. Oct. 9, 2013) (quoting *Rashada v. City of Buffalo,* 2013 WL 474751, at \*4 (W.D.N.Y. Feb. 6, 2013)))). Defendant's argument, however, overlooks contrary caselaw in this district requiring document production of prior complaints of misconduct by corrections officers without a finding that such complaints were substantiated upon subsequent official inquiry, *see, e.g., Sowell v. Chappius,* 2010 WL 1404004, at \*1 (W.D.N.Y. Mar. 31, 2010) ("holding that in a § 1983 action alleging excessive force against inmate plaintiff prior complaints of excessive force against defendants, *"whether substantiated or not "* are discoverable ... so long as the complaints are similar to the constitutional

violations alleged in the complaint *or* are relevant to the defendant's truth or veracity." (citing caselaw) (underlining added)).[4] "In civil rights actions, courts have permitted *discovery* of prior similar complaints or incidents regardless of the outcome of those complaints." *Cox v. McClellan,* 174 F.R.D. 32, 34 (W.D.N.Y.1997) (citing *Unger v. Cohen,* 125 F.R.D. 67, 70 (S.D.N.Y.1989) (italics in original) (" 'complaints that were abandoned or conciliated may not be admissible at trial, *but that does not make them undiscoverable.'* ") (italics added)). *See also Hallasey v. Avery,* 2009 WL 231198, at *3 (W.D.N.Y. Jan. 29, 2009) (requiring production of two citizen complaints of misconduct—defendant sheriff's deputy threw flashlight against car while directing traffic and hit car with his flashlight on another occasion); *Simcoe v. Gray,* 2012 WL 1044505, at *3 (W.D.N.Y. Mar. 28, 2012) (prior complaints of excessive force against defendant police officers, "whether substantiated or not," are discoverable in civil rights actions if similar to alleged constitutional violations or relevant to defendant credibility (citing caselaw—admissibility questions to be directed to trial judge)); *Sileo v. Schuck,* 2010 WL 811321, at *3 (W.D.N.Y. Feb. 26, 2010) (requiring production of "prior complaints of excessive use of force by individual defendants" as relevant to plaintiff's excessive force claim, covering a three-year period prior to alleged event including three months after incident). Caselaw elsewhere within the Second Circuit is similar, *see, e.g., Daniels v. City of New York,* 2014 WL 325934, at *2 (S.D.N.Y. Jan. 27, 2014) (in excessive force case permitting discovery of unsubstantiated and substantiated allegations of officer's excessive use of force reserving question of admissibility pursuant to Fed.R.Evid. 404(b) ("Rule 404(b)") to later time); *Henry v. Hess,* 2012 WL 4856486, at *1 (S.D.N.Y. Oct. 12, 2012) ("complaints of misconduct and disciplinary records against a defendant police officer, substantiated or unsubstantiated that are similar to the allegations in the civil action against him would be subject to discovery" (citing cases)); *Linares v. Mahunik,* 2008 WL 2704895, at *3 (N.D.N.Y. July 7, 2008 (directing interrogatory answers seeking information regarding grievances and complaints of retaliation in support of plaintiff's First Amendment violation allegations as discoverable on issues of defendant's credibility and potential impeachment, and supervisory notice (citing caselaw))). Defendant's contention that the weight of authority precludes Plaintiff's request for similar complaint discovery if such complaints are not shown to have been substantiated therefore cannot be maintained.

The discoverability of prior and subsequent complaints of excessive force derives from the general rule of Rule 404(b) which permits "introduction [as part of a party's case-in-chief evidence] of other wrongful acts for any relevant purpose other than to show propensity." *Lombardo v. Stone,* 2002 WL 113913, at *6 (S.D.N.Y. Jan. 29, 2002) (Scheindlin, J.) (bracketed material added)[5] (citing *United States v. Brennan,* 798 F.2d 581, 589 (2d Cir.1986)). Moreover, "[w]here the evidence is offered for a proper purpose, it makes no difference whether the acts occurred before or after the events at issue." *Id.* (citing *United States v. Germosen,* 139 F.3d 120, 128 (2d Cir.1998) ("the fact that the [similar act] involved a subsequent rather than prior act is of no moment."); *Ismail v. Cohen,* 899 F.2d 183, 188 (2d Cir.1990) (same)). Further, "similar act evidence offered to show a defendant's intent is admissible in a Section 1983 case because the defendant's intent is a relevant element of the constitutional tort." *Id.* (citing *O'Neill v. Krzeminski,* 839 F.2d 9, 11 n. 1 (2d Cir.1988) (evidence of other instances where officers used excessive force admitted to show pattern, intent, and an aggravated state of mind in constitutional tort case); *Eng v. Scully,* 146 F.R.D. 74, 77 (S.D.N.Y.1993) (same)). "A civil rights plaintiff is entitled to prove by extrinsic evidence that the defendant acted for the purpose of causing harm." *Id.* (citing *Eng,* 146 F.R.D. at 79; *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978)). Neither " 'a civil judgment, administrative finding, or even a preliminary judicial finding is required before specific acts of other mis-

---

4. Unless indicated otherwise, all underlining is added.

5. Unless indicated otherwise all bracketed material is added.

conduct may be introduced as extrinsic evidence under Rule 404(b).'" *Lombardo*, 2002 WL 113913, at *6 (quoting *Ismail v. Cohen*, 706 F.Supp. 243, 252–53 (S.D.N.Y.1989), *aff'd in part and rev'd on other grounds*, 899 F.2d 183 (2d Cir.1990)). "'The bottom line is that '[w]here malicious aggravated conduct is purportedly involved, reports [of this conduct] are admissible.'"" *Id.* quoting *Eng*, 146 F.R.D. at 80.

Similarly, as to the credibility of witnesses, while, as Defendant argues, Defendant's Memorandum of Law in Further Support filed July 23, 2014 (Doc. No. 29) ("Defendant's Memorandum in Further Support") at 2 n. 2 (citing cases), specific instances of conduct bearing on the witness's character for truthfulness or untruthfulness may not be proven by extrinsic evidence such instances may, if probative of truthfulness or untruthfulness, in the trial court's discretion, nevertheless be inquired into on cross-examination. Fed.R.Evid. 608(b) ("Rule 608(b)"); *Lombardo*, 2002 WL 113913, at *6 (citing cases). Thus, contrary to Defendant's relevancy objection, caselaw in this district, as well as other districts within this circuit, do not predominantly hold that only "substantiated" complaints of similar misconduct, specifically, as relevant to this case, excessive force complaints against Defendant, are subject to discovery. Further, because those cases relied upon by Defendant supporting such a proposition represent an overly restrictive view of the discoverability of evidence of prior similar complaints contrary to the principle of liberal discovery as embodied in the Federal Rules of Civil Procedures ("Federal Rules"), particularly in civil rights cases, *see Floyd v. City of New York*, 739 F.Supp.2d 376, 381–82 & n. 21 (S.D.N.Y.2010) ("public has a profoundly important interest 'in giving force to the federal civil rights law,'" which is "a factor that will usually support disclosure"), the undersigned declines to follow them; rather, the court adheres to those cases which hold that even unsubstantiated complaints are useful to "resourceful counsel" as potential "leads" to other "evidence" relevant "to the issues of intent or other facts in issue," *Cox*, 174 F.R.D. at 34 (quoting *Unger*, 125 F.R.D. at 70), and therefore subject to production. Defendant's at-

tempt to distinguish *Daniels*, 2014 WL 325934, at *2, Defendant's Memorandum in Further Support at 4, on the ground that the requests at issue were limited to the excessive force claim involving the plaintiff's death, fails. First, this contention impliedly accepts that unsubstantiated claims of similar misconduct are discoverable in a case involving, as here, excessive force and the suggestion that it is permissible only where the excessive force resulted in death is without foundation. In any event, Plaintiff's claims do not involve minor abuse. Defendant's reliance on *Thompson v. City of New York*, 2006 WL 298702, at *2 (S.D.N.Y. Feb. 7, 2006), Defendant's Memorandum in Further Support at 5 n. 6, is misplaced as in that case the court rejected plaintiff's requests because they sought irrelevant records dissimilar to plaintiff's allegations recognizing even unsubstantiated claims may be discoverable as relevant to particular claims.

The court recognizes, as noted, Discussion, *supra*, at 144–45, that some cases in this district limit discovery of a defendant's prior similar acts to substantiated claims for the reason that "it is unlikely that documents relating to unsubstantiated claims of excessive force would lead to admissible evidence." *Evans v. Murphy*, 2013 WL 2250709, at *4 (W.D.N.Y. May 22, 2013) (citing *Crenshaw v. Herbert*, 409 Fed.Appx. 428 (2d Cir.2011)). However, the difficulty with this rationale is that it finds no support in Rule 404(b) permitting use of similar misconduct to establish, as relevant to Plaintiff's claims in this case, pattern or *modus operandi*, or intent, evidentiary purposes specifically contemplated by Rule 404(b) thereby placing such evidence firmly within the scope of discovery pursuant to Rule 26(b)(1). *See Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir.1990) (affirming admission of evidence of Civilian Complaint Review Board complaint of defendant's use of excessive force pursuant to Rule 404(b)); *see also Lombardo*, 2002 WL 113913, at *3 (affirming use of excessive force cases involving similar conduct as proper Rule 404(b) evidence). Under Rule 404(b), such similar act evidence is admissible provided there is "sufficient evidence" of the existence of such similar con-

duct. *Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (noting that requiring a preliminary finding for admissibility by the trial court that similar conduct actually "occurred not only superimposes a level of judicial oversight that is nowhere apparent from the language of the provision, but is simply inconsistent with the legislative history behind Rule 404(b)"). Preventing a litigant from discovery of similar misconduct because it is "unsubstantiated," as Defendant contends, Defendant's Memorandum at 13, thus prevents any possibility that such complaints might be shown to satisfy the "sufficient evidence" test for admissibility at trial contemplated by Rule 404(b), in accordance with *Huddleston,* or lead to the discovery of corroborating information that would do so. To acquiesce in a defendant's objection to requests for unsubstantiated similar misconduct complaints, particularly in prisoner civil rights actions alleging excessive force, thus intrudes improperly upon the trial court's prerogative to make such a threshold admissibility determination and disables prematurely a civil rights plaintiff's capacity to fully develop the record upon which such a later admissibility determination depends.

This is of particular relevance in the instant case where Plaintiff asserts Defendant may have a pattern of violent retaliation against an inmate perceived by him to be flouting Defendant's authority as a corrections officer particularly, where, as here, the alleged retaliation occurs without witnesses or surveillance cameras. *See* Plaintiff's Memorandum at 4; Kaczor Declaration ¶ 65 ("there are no [surveillance] cameras in the school building"). As the Court in *Huddleston* stated "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to the disputed fact, especially when that issue involves the actor's state of mind and the only means of ascertaining the mental state is by drawing inferences from conduct." *Huddleston,* 485 U.S. at 685, 108 S.Ct. 1496. As discussed, Discussion, *supra,* at 145, Defendant's intent is certainly relevant to Plaintiff's excessive force claim. *See O'Neill,* 839 F.2d at 11, n. 1 (citing caselaw). The same holds true where the ultimate issue of fact is likely to turn on the fact trier's credibility

assessment of the Plaintiff and Defendant, assuming Defendant testifies, based on, *inter alia,* a variety of circumstantial evidence including, possibly, acts of Defendant's similar misconduct prior to or following the incident, whether substantiated or not. Obviously, without access to the underlying facts concerning complaints of similar misconduct by Defendant, even if unsubstantiated, Plaintiff's ability to provide "sufficient evidence" supporting their admission, is severely hamstrung at the outset contrary to the liberal discovery contemplated by the Federal Rules.

Moreover, such a broad and inflexible restriction on discoverability pursuant to Rule 26(b)(1), as Defendant argues, also runs contrary to Rule 608(b) which contemplates use of reported, but not necessarily substantiated, misconduct to impeach a witness on cross-examination, *see Lombardo,* 2002 WL 113913, at *6 (Rule 608(b) permits questioning—but not extrinsic evidence—regarding prior misconduct bearing on witness untruthfulness provided counsel has a good faith basis for the question). *See also Hynes v. Coughlin,* 79 F.3d 285, 294 (2d Cir.1996) (questioning related to witness's character for truthfulness requires good faith basis (citing *United States v. Tomblin,* 46 F.3d 1369 n. 52 (5th Cir.1995))). Requests for records of unsubstantiated claims against Defendant of similar excessive force misconduct are therefore reasonably calculated to lead to admissible evidence under Rule 404(b) and may also provide a basis to support an attack on a defendant's credibility upon cross-examination should the defendant deny ever using excessive force against a prisoner. *See, e.g., United States v. Benedetto,* 571 F.2d 1246, 1250 (2d Cir.1978) (trial court has broad discretion to admit evidence of defendant's similar misconduct contradicting defendant's testimony). Moreover, such evidence may also provide a good faith basis upon which to attack Defendant's credibility to the extent permitted by Rule 608(b).

*Crenshaw v. Herbert,* 409 Fed.Appx. 428 (2d Cir.2011), relied on by Defendant, Defendant's Memorandum at 13 n. 23, is not to the contrary. In *Crenshaw,* the Second Circuit upheld the trial court's refusal to permit

document discovery of possible similar excessive force misconduct from Defendant's disciplinary record or DOCCS's investigative files on the ground that based on "the facts" in that "particular case" evidence of a single instance of such act, even if substantiated, would not be admissible under Rule 404(b). *Crenshaw*, 409 Fed.Appx. at 430. Aside from the paucity of information concerning the particular facts revealed by the decision, which prompted the Second Circuit to conclude that a single substantiated act of similar excessive force would not have satisfied the "sufficient evidence" requirement for admissibility pursuant to Rule 404(b) as the Second Circuit stated, such a highly limited ruling directed to admissibility hardly establishes a general rule that any request for unsubstantiated excessive force complaints is outside the scope of discovery in all federal prisoner civil rights cases, including the instant case.

Defendant's reliance on *Berkovich v. Hicks*, 922 F.2d 1018 (2d Cir.1991), Defendant's Memorandum at 2–3, for the proposition that unsubstantiated prior complaints of misconduct, including at least one excessive force claim, where defendant was "exonerated" of six of the seven complaints to a civilian review board, are not subject to discovery, also fails for several reasons. First, in *Berkovich*, the Second Circuit did not hold that such unsubstantiated claims were beyond the scope of pretrial discovery because they lack any basis for possible admissibility at trial under Rule 404(b) and thus are not reasonably calculated to lead to the discovery of admissible evidence as required by Rule 26(b)(1). Rather, the court stated that "[a]ssuming without deciding" that the trial court's refusing discovery of the circumstances underlying the complaints, thus preventing plaintiff's attorney's access to victims and witnesses who may establish sufficient evidence to support admissibility, constituted error, *Berkovich*, 922 F.2d at 1022, the court found such hypothetical error to be harmless because of the court's doubt that in light of defendant's putative exoneration, presumably by the civilian review board with which the alleged complaints were filed, plaintiff could have persuaded the jury to " 'reasonably conclude that the act occurred and that the defendant was the actor.' " *Id.* quoting *Huddleston*, 485 U.S. at 689, 108 S.Ct. 1496. In *Berkovich*, the Second Circuit also found that the trial court's possible error in foreclosing broader discovery regarding the potentially most relevant complaint of an unjustified shooting by defendant was mitigated by the fact that the "details" of this incident were already known to plaintiff thus providing plaintiff with a fair opportunity to develop the facts for presentation at trial, a factor not present in the instant case. *Id.* Finally, the court held that although the prior complaints at issue, if admitted, conceivably would have established defendant's motive for "abusing an argumentative arrestee or for making a pretextual arrest," the trial court's exclusion of such similar act evidence under Rule 404(b) in order to demonstrate motive as a basis for admission was proper because of "its potential for undue prejudice under [Fed. R.Evid.] Rule 403," under which the trial court balances the probative value of challenged evidence against its potential for "unfair prejudice," *Berkovich*, 922 F.2d at 1023 (citing Fed.R.Evid. 403).

In contrast, in the instant case, based on Plaintiff's document requests, Plaintiff is presently unaware of any potential acts by Defendant involving similar misconduct and, as the case is in the discovery phase, there is no basis on which this court (even if it had the necessary authority to do so) may properly consider excluding potentially admissible Rule 404(b) evidence of Defendant's similar misconduct under Rule 403 as a ground to deny Plaintiff's document requests for lack of relevancy pursuant to Rule 26(b)(1), even assuming any such responsive documents could qualify for Rule 404(b) admissibility. Simply, the context for the court's holding in *Berkovich* was after trial, as here, not the discovery phase of the case. Obviously, in contrast to *Berkovich*, as this case is in the discovery phase, there is no basis upon which to engage in speculation that the prior similar misconduct complaints Plaintiff seeks would be futile because under Rule 403 the trial court would be justified in excluding them at trial. Rulings under Rule 403 are by their very nature fact intensive and subject to wide discretion by the trial court. *See*

*United States v. Medico*, 557 F.2d 309, 317–18 (2d Cir.1977) (conducting fact-intensive analysis of trial court's admission of evidence in armed robbery of bank case and concluding trial judge did not abuse discretion). Moreover, contrary to Defendant's claim, Defendants' Memorandum at 2, that in *Berkovich*, plaintiff was denied discovery regarding prior complaints involving defendant, plaintiff actually obtained discovery of all seven prior complaints against defendant, *Berkovich*, 922 F.2d at 1022, but was prevented from discovery of the underlying relevant witnesses and victims to enable plaintiff to establish there was "sufficient evidence" of the misconduct to warrant admissibility under Rule 404(b). *Id.* Significantly, the Second Circuit did not say such restriction on pretrial discovery was proper, only that it did not "warrant a new trial." *Id.*

Finally, that a complaint against Defendant involving similar misconduct was lodged by an inmate either through a grievance or some other administrative process and that as a result no official action against Defendant was taken, does not establish that Defendant was "exonerated," and that possible Rule 404(b) admissibility is therefore futile. Here, although Defendant has denied the existence of any such claims, Kaczor Declaration ¶ 70, the court's *in camera* review of the copy of Defendant's personnel file provided by Defendant reveals none, and the BLR's review of its files for disciplinary action against Defendant proved negative, Kaczor Declaration ¶ 101, Defendant has nevertheless refused, based on an asserted lack of relevance and burdensomeness, to provide other responsive documents, particularly IG investigative reports and inmate grievances involving similar assaultive misconduct by Defendant. It therefore remains to be seen whether Defendant should produce other responsive documents that may yield information relevant to Plaintiff's claims. Here, Plaintiff, through highly qualified counsel, seeks to exhaust the possibility that further document production of these potential sources of reports of Defendant's prior similar misconduct are necessary to ferret out such possible prior similar conduct which may demonstrate a pattern of assaultive response to an inmate Defendant perceives as

having challenged his authority as well as Defendant's intent to violate Plaintiff' Eighth Amendment rights. Plaintiff's Memorandum at 6 ("inmate grievances and IG complaints that reveal other acts of physical abuse by Defendant in response to perceived threats to his authority are relevant").

At this stage, the court cannot, as Defendant urges, properly exclude the possibility that with the aid of such information, should it exist, Plaintiff may well satisfy the criteria for admissibility pursuant to Rule 404(b) to show a pattern involving such conduct or intent to violate the Plaintiff's constitutional right to be free of such excessive force, *see O'Neill*, 839 F.2d at 11 n. 1 (prior similar acts of officer's misconduct admissible pursuant to Rule 404(b) to show relevant intent to use excessive force in § 1983 actions). For example, as to this case, any such prior assaultive misconduct could shed light on the plausibility of Defendant's assertion, included in the record, that Plaintiff's injuries were self-inflicted resulting from a fall while seated on a hallway bench, which also begs the question of why Plaintiff was seated on the bench rather being allowed to use the lavatory after Defendant was informed by Plaintiff's GED teacher that Plaintiff should be permitted to use the lavatory. As noted, Background and Facts, *supra*, at 139, n. 2, Defendant has not disputed that the GED teacher could properly grant such permission. The court's reasoning and disposition of plaintiff's discovery issues in *Berkovich* are, for the foregoing reasons, therefore not dispositive of Plaintiff's motion on this ground. *Berkovich* is therefore distinguishable and does not mandate a denial of Plaintiff's motion on this issue. *See Lewis v. City of Albany Police Dep't*, 547 F.Supp.2d 191, 201 (N.D.N.Y.2008) (*Berkovich* inapplicable to case where unsubstantiated prior complaints admitted pursuant to Rule 404(b) on issues of identity and defendant's intent). The court thus considers Defendant's objection that Plaintiff's remaining document requests should be denied because they are overly burdensome, and that the requested IG reports involve substantial security issues requiring denial of Plaintiff's motion with respect to such investigative material.

*Burdensomeness.*

As noted, Discussion, *supra*, at 140, Plaintiff's document requests remaining at issue cover complaints of similar misconduct contained in inmate grievances against Defendant or in Inspector General investigative reports ("IG reports"), as well as IG Reports and related UIRs involving Defendant and containing statements of Defendant ("Plaintiff's requests"). Plaintiff's request, as recently limited by Plaintiff, encompass inmate grievances coded by DOCCS as involving so-called Staff Conduct for the preceding four years, Discussion, *supra*, at 140–41, and UIRs relating to the requested IG reports involving Defendant or containing any statements of Defendant, covering the past 15 years. *Id.* According to Plaintiff, UIR records are retrievable by a corrections officer's name. Plaintiff's Memorandum at 8. Under a Stipulation of Confidentiality, Moon Affirmation, Exh. 23, ¶¶ 2–3, the use of documents requested by Plaintiff and produced and designated as confidential, whether by Defendant or DOCCS, is limited to the prosecution and defense of the action, and any disclosure and review of documents to Plaintiff designated as confidential is further limited to counsel with Plaintiff's possible viewing of such documents limited to the presence of counsel and to assist in the litigation of the case. Additionally, any submission to the court of confidential documents may be requested to be under seal. *Id.* ¶ 5. Upon completion of the case, all such confidential materials are to be returned and all digital copies deleted. *Id.* ¶ 6. According to Defendant, Plaintiff's grievance requests are burdensome because grievances are filed by the complaining inmate's name, not that of the officer against whom the grievance is directed Bellamy Declaration, ¶¶ 8, 13. Additionally, according to Defendant, further complicating any retrieval responsive to Plaintiff's request, such grievances are further subdivided according to "50 different codes depending on the type of grievance raised," *i.e.*, medical care, harassment, use of force, etc. Bellamy Declaration ¶ 13. Thus, according to Defendant, to search and retrieve any grievances directed to Defendant would require significant manpower to search all such inmate grievances on file with DOCCS. Bel-

lamy Declaration ¶ 14. In response to Defendant's burdensomeness objection, Plaintiff has agreed to limit Plaintiff's request for grievances to a period of four years prior to the alleged assault, *i.e.*, August 4, 2007 to August 4, 2011, and one year following the alleged assault or August 4, 2011 through August 4, 2012. Plaintiff's Reply Memorandum at 7. In an effort to further circumscribe the potential that such physical review of all grievances following within this five-year period would be nevertheless unduly burdensome, Plaintiff has further modified Plaintiff's request to require Defendant's review of all grievances filed and coded by DOCCS as "Staff Conduct." *Id.* Plaintiff contends that with such limits and modifications of Plaintiff's request, any potential for undue burdensomeness should be substantially minimized so as to not outweigh the potential "probative value" to Plaintiff's case of any similar incidents resulting from such production. *Id.*

Defendant nevertheless opposes Plaintiff's modified request for grievances asserting, first, that Plaintiff failed to include this document production request in Plaintiff's initial document request, Defendant's Memorandum (Doc. No. 25–6) at 17; Defendant's Memorandum in Further Support at 3, n. 5 citing *Brown*, 2014 WL 1795015, at *5 ("party seeking to compel discovery must first serve formal discovery demand" (citing *Orraca v. Washborn*, 2011 WL 4352716, at *1 (W.D.N.Y. Sep't 15, 2011))); *Vigliotti v. Selsky*, 2013 WL 3354423, at *3 (W.D.N.Y. July 3, 2013) (same). Defendant also opposes Plaintiff's request arguing Plaintiff has failed to establish Plaintiff's grievance request seeks relevant information under Rule 26(b)(2) and that Plaintiff's latest limitation nevertheless places an "onerous burden on DOCCS to scour through hundreds of documents without sufficient staff." Defendant's Memorandum in Further Support at 4. In addition, according to Defendant, DOCCS's document retention period for inmate grievances is limited to four prior years or, in this case, 2010 to 2014, for a total period of approximately four years, and thus grievances filed between 2007 and 2009 are unavailable. *Id.* In response to Defendant's representation, Plaintiff subsequently stated

that Plaintiff is agreeable to a review by Plaintiff's counsel of DOCCS's inmate grievance files for Staff Misconduct complaints involving Defendant for the past four years, *i.e.*, from 2010. Letter to the Court from Kristina Moot dated August 29, 2014 at 1 n. 1. Defendant asserts Plaintiff cites to no authority permitting such review by counsel, Defendant's Memorandum at 4 n. 7, but has not further addressed this issue. As to Defendant's preliminary objection, while it is the case that in Plaintiff's First and Second Set of Requests for Document Production, Moon Affidavit (Doc. No. 21), Exhs. 2 and 8 (*passim*), Plaintiff did not specifically make reference to inmate grievances, nevertheless in Plaintiff's First Set of Document Requests in Request No. 4 Plaintiff did request *"[a]ny and all* documents relating to guard misconduct involving Defendant in any way, including any reports that did not lead to full investigations." Although it would have been preferable had counsel specified that inmate grievances were also thereby sought, as in federal civil rights cases, a plaintiff's discovery requests are to be liberally construed, *see Smith v. Goord,* 222 F.R.D. 238, 240–42 & n. 2 (N.D.N.Y.2004) (broadly construing § 1983 plaintiff's discovery requests); *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 128 (N.D.N.Y.1984) (citing *Kinoy v. Mitchell,* 67 F.R.D. 1, 12 (S.D.N.Y.1975)), and in light of Plaintiff's broad definitions in Plaintiff's requests that the term "document" was to be interpreted in the "broadest sense," and to include "any kind of documents that are now, or were, formally in your possession, custody or control," Moon Declaration Exh. 2 at 2, the court finds that Plaintiff's formal request for production must be construed to include inmate grievances involving Defendant and is thus a proper subject of Plaintiff's motion. There is, therefore, no merit to Defendant's opposition to Plaintiff's motion on this ground.

Pursuant to Fed.R.Civ.P. 26(c) document requests may be denied where the requested party demonstrates that compliance constitutes an "undue burden or expense." Further, Fed.R.Civ.P. 26(b)(2)(C) requires the court to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." The party seeking a protective order "has the burden of showing that good cause exists by stating particular and specific facts." Baicker–McKee, Janssen, Corr FEDERAL CIVIL RULES HANDBOOK 2014 (Thomson Reuters Westlaw) at 798 (citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Similarly, in the case of a motion to compel document production sought pursuant to Rule 34(a), "the burden is on the responding party to convince the court that a document request is objectionable." Baicker–McKee, Janssen, Corr FEDERAL CIVIL RULES HANDBOOK at 901 (citing cases). In exercising its "extremely broad discretion in ruling on objections to document requests, [t]he court will balance the need for the documents and the burden of producing them, but will generally require production unless the administration of justice would be impeded." *Id.* at 901–02 (citing caselaw). The party asserting a burdensomeness objection has the burden to establish the requests at issue are in fact unduly burdensome. *See Hannah v. Wal–Mart Stores, Inc.,* 2014 WL 2515221 at *4 (D.Conn. June 4, 2014) (overruling plaintiff's objections asserting numerous discovery requests were, *inter alia,* unduly burdensome because plaintiff failed to meet her burden of establishing such asserted undue burdensomeness). More specifically, "[g]eneralized objections that a discovery request is unduly burdensome are insufficient; rather, the party objecting to the requested discovery on the ground of undue burdensomeness must submit an affidavit or other evidence revealing the nature of the burden." *Brown v. Department of Correctional Services,* 2011 WL 2182775, at *16 (W.D.N.Y. June 2, 2011) (citing *Cliffstar Corp. v. Sunsweet Growers, Inc.,* 218 F.R.D. 65, 69–70 (W.D.N.Y.2003) ("for a burdensomeness objection to be sustained, a motion to compel on this ground must be opposed by an affidavit of a person with knowledge of [the subject matter] explaining in reasonable detail the factual basis for such objection.") (bracketed material in original))). *See also Burns v. Imagine Films Entertainment, Inc.,* 164 F.R.D. 589, 592–93

(W.D.N.Y.1996) (holding generalized objection that a discovery request is burdensome without resort to specific reasons in insufficient to justify refusal to respond). Additionally, it is well-established that in responding to a Rule 34(a) request, the party may make the relevant files available for the requesting party's inspection, instead of reviewing the files itself and producing copies of relevant documents. *Pass & Seymour, Inc. v. Hubbell Inc.,* 255 F.R.D. 331, 335 (N.D.N.Y.2008) (permitting requesting party to review files complies with Rule 34).

■ Here, despite Plaintiff's substantial limitation on the scope of its request for documents to a narrower period—a four-year period based on DOCCS's retention policy as asserted by Defendant and to the single category of grievances pertaining to Staff Conduct as coded by DOCCS—Defendant asserts that compliance would nevertheless create and "onerous burden" to review "hundreds of documents without sufficient staff" to do so. Defendant's Memorandum at 4. Although, in opposing Plaintiff's motion to compel and in support of Defendant's motion for a protective order, Defendant submitted the Declaration of Carol Bellamy, Director of DOCCS's inmate grievance program, (Doc. No. 25–4 filed June 30, 2014) ("Bellamy Declaration"), the court's review of Ms. Bellamy's Declaration finds no statement specifically addressing the amount of time and manpower that would be reasonably required to review the more limited number of grievances for staff conduct needed to respond to Plaintiff's modified request limited to the period 2010–2014. This is demonstrated by the fact that Ms. Bellamy's Declaration was dated May 14, 2014, and Plaintiff's recent limitation (a reduced period to five years from Plaintiff's original request for grievances against Defendant over the past 15 years) was stated in Plaintiff's counsel's letter to the court filed September 3, 2014 (Doc. No. 36). In any event, the Bellamy Declaration also fails to provide any statement of the number—actual or estimate—of grievances that would be subject to Plaintiff's limited request, *i.e.,* likely filed—by inmate—under DOCCS's Staff Conduct code, rendering her estimate that "hundreds, if not thousands, of hours" would be required to "cull through" all inmate grievances to locate any related to Defendant as too generalized and thus insufficient to support Defendant's burdensomeness objection on this issue. Indeed, it is unclear how Ms. Bellamy, who appears to be located in Albany, could have any knowledge as to the actual quantity of grievances filed at Five Points potentially subject to Plaintiff's request, unless provided by staff at the facility, (a fact not mentioned in Ms. Bellamy's Declaration) thus presenting an issue of foundational sufficiency. *See* Bellamy Declaration (*passim*).

Additionally, based on the record, it appears Defendant was assigned to the Five Points Correctional Facility, where the requested grievances are maintained on file under the complaining inmates' names, Bellamy Declaration ¶ 15, for the past four years for which any inmate grievance remain in existence as DOCCS has stated. The court is thus left with counsel's unsupported assertion that to process Plaintiff's significantly more limited request, would nevertheless be unduly burdensome because it would require reviewing "hundreds of documents," based on Ms. Bellamy's generalized averment that an excessive amount of manpower would be required to comply with Plaintiff's requests. As to this estimated number, the court fails to see how requiring DOCCS, acting on behalf of Defendant, to review "hundreds of grievances" limited to those filed by inmates at Five Points where Defendant was assigned over the past four years and filed by DOCCS as referring to Staff Conduct only would be unduly burdensome given Plaintiff's need for such discovery. For instance, in submitting Defendant's personnel file to the court for an *in camera* review, counsel requested the court to review 135 pages of material which the court estimates required a maximum of 30–45 minutes to complete. Moreover, it is obvious from the fact that DOCCS had already coded the grievances as involving Staff Conduct, now subject to Plaintiff's much more limited request, that DOCCS was quite able to expend a reasonable amount of staff time to accomplish this administrative review necessary for filing under the coding categories as Plaintiff notes.

Plaintiff's Reply Memorandum at 7 (discussing the significant amount of time DOCCS devotes to "tracking and recording" inmate grievances (citing DOCCS's Inmate Grievance Program Annual Reports 2009–2012, (Moon Declaration Exhs. 2–3))). By extension, in the absence of any contrary showing by Defendant, to review "hundreds of documents" constituting such Staff Conduct grievances would, the court therefore estimates, at most require approximately 10 hours by one person, assuming even a maximum of 900 documents. As Defendant's estimate is probably unduly large, a fairer estimate is probably a time period significantly less than 10 hours (perhaps 3 1/2–5 hours based on the court's experience in reviewing the Defendant's personnel file).

Balanced against Defendant's failure to demonstrate Plaintiff's request is unduly burdensome is the obvious need Plaintiff has for this information. As discussed, Discussion, *supra*, at 145–46, should this review in fact reveal even one substantially similar complaint, such information could well become admissible through Plaintiff's counsel's further investigation, pursuant to Rule 404(b), as circumstantial evidence on the issue of Defendant's pattern of assaultive conduct and his alleged intent to inflict unconstitutional harm against an inmate like Plaintiff he perceived as challenging his authority to control inmate movement. *See Lewis,* 547 F.Supp.2d at 201 (prior complaints probative of defendant's identity intent and pattern of absence). As noted, other than the parties, there were no witnesses to the incident, and in these circumstances, should evidence of prior assaults by Defendant be produced, a jury may well be aided in evaluating whether, as Defendant has asserted, the injuries of which Plaintiff complained—damage to his ear drum (as found by prison infirmary staff) and painful injury to his genitals as to which Plaintiff persisted in complaining—were self-inflicted based on a fall from a seated position on a hallway bench. Defendant's reliance on several cases, Defendant's Memorandum at 17 n. 24, in support of Defendant's burdensomeness objection to Plaintiff's requests is equally unavailing. A careful reading of these cases indicates they are factually distinguishable and do not support that

Plaintiff's requests are burdensome. For example, in *Lionkingzulu v. Jayne,* 2013 WL 6628234, at *2 (W.D.N.Y. Dec. 16, 2013) the court, in an excessive force case, denied plaintiff's request for "all" grievances against defendants for three prior years because such grievances were filed by inmate and not the defendant corrections officers. Here, Plaintiff's request is limited to grievances related to Staff Conduct, a more limited request than the overly broad request for "any and all grievances" rejected in *Lionkingzulu. Lionkingzulu,* 2013 WL 6628234, at *2. Likewise, in *Treadway v. Voutour,* 2011 WL 3159102, at *3 (W.D.N.Y. July 26, 2011), the plaintiff's request for all grievances for 2008–2010 were not limited to any coded category such as Staff Conduct as limited by Plaintiff and were found to be without potential probative value to plaintiff's claims of inadequate dental care. Further, in *Ashford v. Goord,* 2009 WL 2086838, at *4 (W.D.N.Y. July 10, 2009) the court, while rejecting plaintiff's request for all grievances filed against several defendants over the prior seven-year period as "overly broad," indicated that plaintiff could "serve a more focused request for this information." *Id.* Thus, the cases relied upon by Defendant to support Defendant's objection based on burdensomeness do not preclude production or inspection of grievances filed as Staff Conduct on file at the facility. As such, the court finds Plaintiff's need for the discovery at issue outweighs any potential to be unduly burdensome to Defendant and, in searching for and producing the requested grievances, that Defendant has not met his burden to establish Plaintiff's request for the inmate grievances will constitute an undue burden on DOCCS. Alternatively, if the Defendant prefers, Defendant and DOCCS may arrange to permit Plaintiff's counsel to review the available grievances under the Staff Conduct code, as permitted by Rule 34(a), at the facility for the four year period as requested by Plaintiff. *See Pass & Seymour, Inc.,* 255 F.R.D. at 336.

*Inspector General Files.*

█ Plaintiff's First Set of Requests for Documents included "all Inspector General files, concerning the Inspector General's investigation into all aspects of the incident in

litigation" (Request No. 1), and those "concerning any other incidents involving the Defendant in any way." (Request No. 3). Defendant has complied with Request No. 1, Kaczor Declaration (Doc. No. 25-1) ¶ 97 (IG file relating to Plaintiff's claim produced to Plaintiff's attorney on December 20, 2013, pursuant to Stipulation of Confidentiality). As to Plaintiff's request, Request No. 3, for all IG files in which Defendant was "involved in any way," Plaintiff agreed in a "meet and confer" meeting with Defendant's attorney on January 10, 2014, to limit this request to the past fifteen years. Moon Affirmation (Doc. No. 21) ¶ 19, however, this proposed reduction in scope was also rejected by Defendant. *Id.* During oral argument on July 31, 2014, confirmed by Letter to Court from Kristina Moon, Esq., Plaintiff's counsel, dated August 29, 2014 (Doc. No. 36) ("Moon Letter"), Plaintiff further reduced the scope of this request to a ten-year period. Moon Letter at 1; Plaintiff's Supplemental Memorandum (Doc. No. 46) at 1. Plaintiff seeks these records for the purpose of not only discovery of possible similar acts against inmates by Defendant but also to retrieve information revealing false or inconsistent statements Defendant may have given to IG investigators or a failure to cooperate in the investigation in connection with investigations not directed to Defendant as the potential basis for attacking Defendant's credibility. Plaintiff's Memorandum at 15–16.

In response, Defendant states that although IG files have been digitized starting nine years ago and can be searched by the name of a particular corrections officer, such as Defendant, a physical review of any file identified through a computer search of the IG file in the database will nevertheless be required to ascertain whether the file, including undigitized portions, related to charges against such corrections officer or contains any statements of the officer in connection with an unrelated IG investigation. *See* Letter of Kathleen M. Kaczor to the court, dated August 26, 2014 (Doc. No. 35) ("Kaczor Letter") at 1–3. It is also asserted that strict confidentiality of all IG files be maintained to protect complainants and witnesses who rely on the IG's representations of confidentiality and that breaches of this representation would severely undermine the ability of the IG to carry out its important governmental responsibility to investigate alleged wrongdoing within DOCCS including, as relevant here, assaults upon inmates. Further, Defendant represents, access by inmates to materials, including documents, developed during IG investigations, could enable inmates to compromise the security necessary to effectively carry out the IG's investigative operations and possibly impair DOCCS's ability to maintain prison security. *Id.* Plaintiff objected to Defendant's asserted grounds for refusing production. *See* Moon Letter at 2.

In this letter, Plaintiff contends Defendant's showing was insufficient to avoid discovery for several reasons, including the absence of an affidavit of someone with personal knowledge of the facts, any assertion of the number of files which may require review, and the related cost of production, raising doubts as to the limited methods available described by Defendant with which to review subject files, and whether an indexing system is available to facilitate in the identification of such files. Plaintiff also points out that, according to Plaintiff's research, at least within New York state, Defendant's name is unusual obviating the need for a significant amount of time to review each IG file containing Defendant's name to determine whether in fact the reference is to Defendant. Moon Letter at 2. Plaintiff also notes Defendant's representations contrast with Plaintiff's counsel's prior experience in prisoner litigation with the local Attorney General's office in which requested IG files, similar to Plaintiff's request, were produced without objection or difficulty. *Id.* at 4 n. 4. Plaintiff also contends that Defendant's contention that an IG file may contain other than investigative material directed against Defendant, merely echoes Plaintiff's request for such statements including as a reporting officer in any related UIR as potentially relevant to Plaintiff's requests bearing on Defendant's credibility. *Id.* at 3–4 (citing *Lombardo,* 2002 WL 113913, at *8 (defendant's false information proffered to investigator relevant to defendant's credibility)).

In response, Defendant filed, on September 12, 2014, the Declaration of Christopher Martuscello, Deputy Inspector General of the DOCCS Inspector General (Doc. No. 39–1) ("Martuscello Declaration"). A careful reading of the Martuscello Declaration indicates it generally reiterates the representations made in the Kaczor Letter to explain why granting Plaintiff's motions with respect to the IG files responsive to Plaintiff's Request No. 3 as limited to the 10–year period prior to the present time, would be unduly burdensome. After reviewing the Martuscello Declaration, the court's conclusion is, however, that it fails to do so. Reduced to its relevant essentials, Defendant's proffer indicates that it is possible to conduct a complete search of all IG files for at least the past nine years to identify files with Defendant's name. Martuscello Declaration ¶ 6 ("IG's office can search files by inputting a C.O.'s name"). Following such identification or "hit" by the computer program applied to the IG's database, *id.*, each file would require manual review to ascertain information related to Defendant, specifically, that the file contained investigative information concerning Defendant whether based on a complaint directed against Defendant or any statements made by Defendant to IG investigators as Plaintiff requests. *Id.* ¶ 7. While it may be correct, as the Martuscello Declaration states, Martuscello Declaration ¶ 6, that using both Joseph and Lunduski as search words could generate extra files for review, this burden can be minimized by limiting the word search to Lunduski, an unusual name, a fact not disputed by Defendant. Although Deputy Martuscello explains that he queried the database using Joseph and Lunduski, Defendant's first and last name, and obtained a "hit," no further information as to whether such "hit" was the only hit resulting from the Martuscello query is provided. Martuscello Declaration (*passim*). Defendants do not indicate that there is more than one person with Defendant's surname employed by DOCCS. It is also unlikely there will be an overwhelming number of hits requiring further manual review for responsiveness to Plaintiff's request, a question unaddressed by Deputy Martuscello's Declaration. Relevantly, the Martuscello Declaration does not provide even an estimate of the cost of such review. Although Deputy Martuscello says he inputted Joseph and Lunduski and retrieved a file identified by the computerized search of the IG database, Martuscello fails to state, as Plaintiff points out, Plaintiff's Supplemental Memorandum at 45, how many hits using even both names were generated by Martuscello's computer search on the IG file database. To illustrate, while Deputy Martuscello asserts that it would be burdensome to manually review IG files that were not fully in digital form "for every hit obtained," Martuscello Declaration ¶ 6, there is no indication that other than the single file discussed, any other hits were in fact "obtained," by Martuscello's searches. Defendant does not further address this important, if not determinative, question. Certainly, any standard word search program, if properly implemented, would be expected to inform the user of the total number of files located within the database containing both such names in the subject database when entering the search request. Even if the IG's system did not allow an end-user to obtain such basic information, certainly the system's manager or other technician could be requested to do so. Indeed, if a high number of hits resulted, it would be reasonable to expect that Deputy Martuscello would have pointed to such fact as evidence that Plaintiff's request was unduly burdensome, despite the existence of the IG's computer accessible database and Defendant's ability to search the database for files containing the Defendant's name. Finally, that manual retrieval and review of the original files may be required or the fact that such files may be in storage are not sufficient reasons to defeat production. This is true in a wide variety of civil cases in this court and Defendant's belated disclosure that DOCCS maintains an "IG identification number" related to such files, Martuscello Declaration ¶ 4, ("[w]hether by C.O. name *or an IG identification number,* paper files [stored in New York City] must be manually retrieved and searched"), as Plaintiff noted, Plaintiff's Supplemental Memorandum at 6–7, evidences that the IG also maintains records in a manner to facilitate retrieval for its own purposes, when necessary. Why else assign an

"identification number" to search stored paper files concerning IG investigations which may involve Defendant and can be identified by searching the digitized database? The difficulty and cost of locating and obtaining responsive files is also not addressed by Deputy Martuscello. Thus, based on Deputy Martuscello's explanation, directing production of the IG files at issue is not likely to create "an enormous and unwarranted burden on the IG's office," as Defendant claims. Martuscello Declaration ¶ 6. To the contrary, Deputy Martuscello's Declaration demonstrates that the IG is quite capable of identifying, locating and reviewing files, both digitally and manually, responsive to Plaintiff's Request No. 3 without incurring such asserted undue burdens. Defendant has therefore failed to satisfy his burden to establish that Plaintiff's requests for IG files involving Defendant are unduly burdensome.

Defendant's security concerns arising from the requested production of responsive IG files, while acknowledged by the court, are easily addressed by the fact that DOCCS has, with the IG's agreement, produced the IG file for the incident leading to the instant action subject to the Stipulation of Confidentiality ("the Stipulation"). Kaczor Declaration ¶¶ 95, 97. If the IG security concerns, as more fully explained by the Martuscello Declaration, could not be sufficiently addressed by production in accordance with the Stipulation, it is doubtful such production would have occurred voluntarily with the IG's agreement as it did in this case. Defendant fails to explain why further production of IG files, requested by Plaintiff, as discussed, Discussion, *supra* at 153–55, cannot also take place consistent with the IG's valid security concerns, in accordance with the Stipulation of Confidentiality, with respect to the IG files at issue, and the court fails to see any such potential. Federal courts are sensitive to such valid prison security issues related to discovery in prisoner civil rights cases and have acknowledged that in cases where the plaintiff is represented by counsel, as Plaintiff is in this case, such counsel, particularly experienced counsel of record, may be relied upon to "safeguard prison security and the personal safety and privacy interests of the Corrections Officers and their families." *In-mates of Unit 14,* 102 F.R.D. 122, 128–29 (N.D.N.Y.1984) (permitting plaintiff's attorneys, Prisoner's Legal Services, in a case alleging a "pervasive pattern and practice of unlawful assault," to conduct an eyes only inspection of defendants' personnel files subject to redaction and limited sharing of information with inmate plaintiffs). Accordingly, Plaintiff's request for production of the disputed IG files including any related UIR documents contained in or connected to such files should be GRANTED. Defendant's cross-motion for a protective order based on lack of relevancy and burdensomeness with respect to such files should be DENIED.

### Area Blue Prints, Diagram To–Scale and Bench Dimensions.

In Plaintiff's First Request for Production, Request No. 13, included a request for a to-scale diagram or blueprint of the area and bench dimensions where the alleged assault on Plaintiff occurred as it existed at that time and the dimensions of the hallway bench from which Defendant maintains Plaintiff fell voluntarily. Despite Defendant's initial objection based on security issues, Kaczor Declaration ¶ 110 ("such disclosure presented a significant security risk"), at the court's suggestion following oral argument, by letter dated August 8, 2014 (Doc. No. 34), Defendant informed the court Plaintiff was provided, in accordance with the Stipulation of Confidentiality, with a copy of a diagram of the area with dimensions. Plaintiff has not responded on the record to this proffer; in the absence of any communication from Plaintiff indicating this material for some reason is an inadequate response, the court presumes Plaintiff's motion as to this issue should be and is deemed withdrawn as moot. The court also presumes, although not expressly addressed by the parties, that Plaintiff's request for scale dimensions of the relevant bench is also moot based on Defendant's production of the area diagram, and Plaintiff's access to the area, including taking and photographing measurements of the bench from which Defendant claims Plaintiff to have "purposefully" fallen, Defendant's Memorandum at 22, on November 25, 2013, as reflected in Defendant's *in camera* submissions. *See* Seal Document filed December

18, 2014. Helpfully, Defendant does not intend to contest Plaintiff's bench measurements. Defendant's Memorandum (Doc. No. 25–6) at 22 ("no one contests the height [18 inches] of the bench [ ]"). As to this request, Plaintiff's motion should therefore be DISMISSED as moot, without prejudice.

*Audio Recording.*

 In Plaintiff's Request No. 16, Plaintiff requested a better quality copy of an audio tape recording of Plaintiff's Tier II disciplinary hearing on August 4, 2011. Moon Declaration ¶ 33. Plaintiff asserts the transcript of the hearing provided by Defendant is incomplete as the audibility of the entire original recording itself is significantly impaired by background noise. Moon Declaration ¶¶ 33, 35; Plaintiff's Memorandum at 19. Defendant's objection is based on Defendant's opinion that a transcript of the tape produced by DOCCS should be sufficient for Plaintiff's review, Defendant's Memorandum at 20, although acknowledging that DOCCS was unable to improve the quality of the tape without risking possible damage. Kaczor Declaration ¶ 125. Defendant also asserted that as Plaintiff's attorney had, prior to commencing the suit, obtained a copy of the tape, Plaintiff should at his own expense, attempt to enhance it in order to produce an accurate transcript. *Id.* ¶ 123. Alternatively, Plaintiff requested the court permit Plaintiff's attorney to listen to the original tape recording with the assistance of an audio technician to determine whether it is feasible using advanced audio recording enhancement techniques to produce a more audible copy which could result in a more accurate transcript of the hearing. Plaintiff's Memorandum (Doc. No. 22) at 20. Defendant objects to this proposal asserting a risk of irreversible damage to the original tape. Defendant's Memorandum at 21. In reply, Plaintiff represents based on Plaintiff's counsel's consultation with a qualified audio technician, John Hilton, a process is available by which the subject tape may be safely enhanced with virtually "no chance" of damage. Declaration of John Hilton, Doc. No. 27–7, ¶ 7 (describing technical steps in process and stating in his experience the probability of damage to the tape is "less than 1%"). In contrast, while not contesting Mr. Hilton's qualifications, Defendant maintains he has no authority to authorize the requested release of the tape for enhancement by Plaintiff's technician, and that even the small risk of damage acknowledged by Mr. Hilton outweighs the probative value of an enhanced tape. Defendant's Memorandum (Doc. No. 29) at 6.

 Rule 34(a) broadly permits a party to "inspect, copy, test or sample ... sound recordings." Here, the record indicates that (1) the of the tape of the Tier II hearing provided to Plaintiff by DOCCS includes testimony of potential witnesses including the GED class teacher who allegedly gave Plaintiff permission to use the lavatory and so advised Defendant at Plaintiff's request prior to the assault and the infirmary nurse who examined Plaintiff, Moon Declaration ¶ 35; Plaintiff's Memorandum (Doc. No. 22) at 19, (2) the copy of the audio tape's "unclear prior statements" of the parties and witnesses, *id.,* are indicative that it lacks a satisfactory level of audibility, and (3) the transcript of the tape provided by DOCCS to Plaintiff is thus similarly inaccurate in that it does not completely represent all of the audible testimony discernible from listening to the tape. *Id.* According to Plaintiff, the copy provided was created by playing the tape on an "old model cassette player next to another cassette player that recorded the original tape playing, plus additional background noise." Plaintiff's Memorandum at 20. As Defendant does not specifically contest Plaintiff's representations describing the audibility and accuracy issues presented by the copy of the tape obtained by Plaintiff and transcript obtained by Plaintiff based on the tape, nor the method of reproduction employed by DOCCS, the court finds it unnecessary to conduct its own *in camera* review of the tape and transcript, and Defendant does not request such an *in camera* review. Rather, in opposition to Plaintiff's request, Defendant, although conceding the original recording was "muddled," Defendant's Memorandum argues that Defendant is not required to provide a tape of better audibility at its expense. Defendant further argues that Plaintiff has a sufficient number of parties and witnesses' prior statements regarding the incident with which to cross-examine Defendant and the witnesses

at deposition or trial, and that granting Plaintiff's request to release the original tape for enhancing procedures conducted even by an outside expert like Mr. Hilton may risk damage to the original tape. *Id.* Tape recordings that include " 'unintelligible portions as to render the recording as a whole untrustworthy' " will be deemed inadmissible. *Mendez v. International Food House Inc.,* 2014 WL 4276418, at \*2 (S.D.N.Y. Aug. 28, 2014) (recordings are inadmissible as too indiscernible or inaudible if " 'the unintelligible portions are so substantial as to render the recording as a whole untrustworthy [or] . . . without evidentiary value [,] . . . [or] as to render the remainder more misleading that probative.' " (quoting *United States v. Bryant,* 480 F.2d 785, 790 (2d Cir.1973))). *See also United States v. Thompson,* 349 F.Supp.2d 369, 374 (W.D.N.Y.2004). Moreover, this test is not the sole criterion upon which the merits of Plaintiff's request turns as Plaintiff's request ultimately seeks an improved copy of the tape and a more accurate transcript not necessarily for the purposes of admission of the tape recording as evidence, as was the issue in *Thompson,* in support of Plaintiff's case, but for potential cross-examination based on a prior inconsistent statement of any witnesses who testified at the hearing and who are likely to testify at trial, under Fed.R.Evid. 613 and 801, or, if needed and more likely, to refresh such witnesses's recollections pursuant to Fed.R.Evid. 612 at trial or deposition. Defendant's contention that production of the original tape should be denied because Plaintiff has failed to attempt to enhance the copy in Plaintiff's possession lacks merit as Plaintiff's expert avers that the process to be used requires the enhancing process be applied to the "original" cassette tape recording. Hilton Declaration ¶¶ 5 b., c., 6. According to Mr. Hilton, using the copy of the tape for this procedure used by DOCCS would minimize the chances for enhancement as such copy included "additional background noise" and "loss of quality" in the absence of "a direct connection," between the two tape players. *Id.* ¶ 6. These factors, unaddressed by Defendant's opposition, thus support Mr. Hilton's opinion that "[i]t would therefore be best to use the original recording for the base of any enhance-ment in order to have the greatest chance of recovering verbal testimony." *Id.* ¶ 6. Defendant offers no expert analysis or opinion to the contrary. Moreover, Defendant's reliance on Fed.R.Evid. 608, Defendant's Memorandum in Further Support at 6, precluding the use of extrinsic evidence of character, is misplaced, as Plaintiff's purpose in seeking a more completely accurate transcript of the hearing is, as discussed, Discussion, *supra,* at 157–58, to enable Plaintiff to potentially impeach Defendant and other witnesses based on prior inconsistent statements or to refresh recollection, not to raise issues of a witnesses' character or prior conduct bearing on such witnesses' character for truthfulness, the subject matter to which Rule 608 is directed. As such, the testimony on the hearing tape would not constitute a specific act of conduct by a witness demonstrating such witness's capacity for truthfulness or untruthfulness to which the prohibition against extrinsic evidence under Rule 608(b) applies. Defendant's reliance on Rule 608(a) is accordingly inapposite.

Whether to permit, pursuant to Fed. R.Civ.P. 34(a), testing, whether "destructive" or "non-destructive," " 'rests within the sound discretion of the court,' " *Ramos v. Carter Express, Incorporated,* 292 F.R.D. 406, 408 (S.D.Tex.2013) (quoting *Ostrander v. Cone Mills, Inc.,* 119 F.R.D. 417, 419 (D.Minn.1988)). In exercising such discretion, courts "balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for the truth against the burdens and dangers created by the inspection." *Id.* (internal quotation marks and caselaw omitted). Here, given that Plaintiff's claims may in part be corroborated by the testimony of neutral witnesses at Plaintiff's disciplinary hearing, the importance of accurate reconstruction of that prior testimony at trial is self-evident. For example, if the recorded testimony supports Plaintiff's allegation that Plaintiff's GED class teacher informed Defendant she had given Plaintiff permission to use the lavatory immediately prior to the alleged assault, a reasonable juror could find such evidence, should the teacher's deposition or trial testimony vary materially from the hearing tape, helpful in determining whether Plaintiff's in-

juries, including injury to his eardrum and genitals, were self-inflicted as Defendant maintains, or not. Assuming such testimony is consistent with Plaintiff's version of the scenario, it may also bolster Plaintiff's credibility in the eyes of the jury. Thus, the requested enhancement properly considered as a form of inspection or non-destructive testing within the scope of Rule 34(c) is directed to a matter of import to the "search for truth," *Ramos,* 292 F.R.D. at 408 (citing cases), establishing Plaintiff's request is relevant and necessary. *Id.* n. 2 (citing *Mirchandani v. Home Depot, U.S.A., Inc.,* 235 F.R.D. 611, 613–14 (D.Md.2006)). Further, given the low risk of damage to the original tape and Plaintiff's expert's protocol which includes making a "backup" copy of the original, there is little likelihood Defendant will be prejudiced in Defendant's ability to address any evidentiary issues to which the hearing testimony may become relevant. *Id.* Even assuming the possibility of some risk of damage not addressed by the back-up protocol, Defendant fails to point to "less prejudicial methods to obtain the evidence sought" or to explain why the use of such protocols do not constitute "adequate safeguards to minimize" the risk of "prejudice" to Defendant. *Id.* (quoting *Mirchandani,* 235 F.R.D. at 614).

Defendant's contention that Plaintiff's request for the original tape in connection with an outside professional effort to enhance the tape to minimize problems of inaudibility because Plaintiff's document production request did not include this demand, Defendant's Memorandum in Further Support at 6, exalts form over substance and therefore provides no ground to refuse Plaintiff's request. There is no dispute that Plaintiff's demand includes a request for a copy of the Tier II hearing tape recorded testimony assuring a sound quality equivalent to the original. Moon Declaration Exh. 2 ¶ 16. Plaintiff's request to 'borrow' the original tape in order to facilitate professional enhancement was asserted after Defendant refused to attempt to do so on its own initiative in response to Plaintiff's request. Plaintiff's Memorandum at 8–9. To insist, as Defendant does, that to provide a proper basis for Plaintiff's motion requesting production of the original tape to enable Plaintiff to attempt to produce an enhanced copy at Plaintiff's expense Plaintiff should be required to serve a second request for such production would, given the generalized and uncompromising nature of Defendant's refusal, and likely reassertion against a fresh request by Plaintiff, constitute a futile and unnecessary exercise in violation of Fed.R.Civ.P. 1 (Federal Rules to be interpreted to achieve "the just, speedy, and inexpensive determination of every action."). Defendant's argument that Defendant has no ability to authorize production of the disputed tape for testing is essentially the same as Defendant's threshold assertion that Defendant lacks possession, custody or control of the tape, as assertion already rejected by the court. *See* Discussion, *supra,* at 144. Thus, the court finds the record supports Plaintiff's request and that Defendant's concern for preserving the integrity of the original tape is outweighed by Plaintiff's need for an audible copy and the fully accurate transcript that can then be produced for subsequent use in the further litigation of this case as well by the technical precautions which Plaintiff represents will be taken by the experienced audio technician to minimize any potential for damage to the original tape.

Accordingly, Plaintiff's motion directed to the audio tape of Plaintiff's Tier II hearing should be GRANTED on condition that the enhancement process be conducted in accordance with the protocols set forth by Mr. Hilton.

### *Defendant's Mental Health Records.*

■ In Plaintiff's Third Set of Requests for Production, dated January 28, 2014, Plaintiff requested documents regarding (1) any mental health treatment or counselling records Defendant may have received from 2008 to the present, Moon Declaration Exh. 24, Request No. 1, (2) "any support or counselling requested and/or received by the Defendant" provided by DOCCS as part of an "employee assistance program," *id.* Request No. 2, (3) Defendant's participation in "programs, counselling or treatment ... related to anger management or anger impulse control issues," *id.,* Request No. 3, and (4) Defendant's participation in drug or alcohol abuse "counselling or treatment." *Id.,* Re-

quest No. 4 ("Plaintiff's requests for Defendant's mental health records" or "Plaintiff's requests").

Defendant objected to Plaintiff's requests for Defendant's mental health records on grounds of lack of relevancy, vagueness, over breadth, and asserted the psychotherapist-patient privilege. Moon Declaration Exh. 25 at 5–6. Defendant also asserted Plaintiff's requests for Defendant's mental health records were served to harass and invade Defendant's privacy. Id.

Plaintiff contends that the requests are warranted by Plaintiff's allegations that Defendant violently reacted against Plaintiff because Defendant became enraged, lashing out at Plaintiff, based on his perception that Plaintiff, by requesting Plaintiff's GED class teacher corroborate Plaintiff's lavatory request, had thus contradicted Defendant's refusal to allow Plaintiff to use the lavatory. Plaintiff's Memorandum (Doc. No. 22) at 22. Plaintiff argues such a reaction, given the seriousness of Plaintiff's injuries and the ferocity of Defendant's assault, as alleged, constituted abnormal behavior suggesting a need for psychological counselling or treatment including for issues of anger management and potential substance abuse. Id. Plaintiff further contends that, to the extent Defendant asserts a potentially viable psychologist-patient privilege, available under Fed.R.Evid. 501, and the Supreme Court's acceptance of the psychotherapist-patient privilege in Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), Defendant has failed to serve a privilege log supporting, as required by Fed.R.Civ.P. 26(b)(5)(A)(ii) (where party withholds discoverable information based on a privilege "party must describe the nature of the documents … in a manner that … will enable" the requesting party "to assess the claim.") ("Rule 26(b)(5)(A)(ii)"). Plaintiff's Memorandum (Doc. No. 22) at 23 (citing cases). Specifically, Plaintiff submits that when Plaintiff sought clarification from Defendant's attorney as to whether, while asserting the privilege in response to Plaintiff's requests for Defendant's mental health records, that no timely privilege log was served by Defendant, indicated that no responsive documents

existed, Defendant's attorney refused to respond directly. Id. (Moon Declaration ¶ 50) (stating that during an April 10, 2014 meet and confer phone call on this issue, the AAG initially responded that she "has nothing to withhold" and when Plaintiff's attorney "tried to clarify whether that [the AAG's statement] meant Defendant had never received any treatment responsive to the requests, … the AAG declined to answer Plaintiff's counsel's follow-up questions based on Defendant's asserted [patient-psychotherapist privilege."] Plaintiff also states Plaintiff seeks the court's determination that assuming responsive documents exist, a possibility implied by Defendant's attorney's ambiguous response to Plaintiff's counsel's queries, Defendant's asserted privilege has been, by virtue of Defendant's failure to serve the required privilege log, waived. Plaintiff's Reply Memorandum at 10 citing Brown v. Dep't of Correctional Services, et al., 2011 WL 2182775, at *15 (W.D.N.Y. June 2, 2011). Should the court determine that Defendant's asserted privilege has not been waived as Defendant argues, Plaintiff requests that Defendant be directed to promptly serve a privilege log to facilitate Plaintiff's review of grounds for the asserted privilege so that Plaintiff may determine whether a motion to compel is required. Id. at 10–11.

In opposition, Defendant argues no privilege log is required in the absence of Plaintiff's demonstration of the existence of the requested mental health records, and that such records are sufficiently relevant to warrant production. Defendant's Memorandum at 23 n. 26 (citing Sileo v. Schuck, 2010 WL 811321, at *3 (W.D.N.Y. Feb. 26, 2010) (plaintiff's request for records of defendant's psychological evaluations and attendance at any anger, occupational, or stress management classes denied as connection between such records and plaintiff's excessive force claim too "speculative" to warrant discovery)); id. at 24 (no privilege log required to support asserted privilege absent Plaintiff's showing of relevance and that records exist). Plaintiff has not served Defendant with an interrogatory asking whether the Defendant in fact has engaged in any mental health or substance abuse treatment covered by Plain-

tiff's mental health records request nor has Defendant opposed Plaintiff's motion on the ground that such documents are not within Defendant's possession, custody, or control. As noted, Defendant's objection does not include a denial that responsive documents exist.

Defendant is correct that absent a showing that the requested discovery seeks relevant evidence as defined by Fed.R.Civ.P. 26(b)(1) ("Rule 26(b)(1)"), there is no need to consider whether responsive information is protected by an asserted privilege, and, *a fortiori*, whether such privilege may have been waived. *See Donovan v. Csea Local Union 1000, American Federal of State, County and Municipal Employees, AFL–CIO*, 1984 WL 49172 at *2 (N.D.N.Y. May 17, 1984) (where court finds "material sought" by requesting party "is not relevant ... and therefore not discoverable, there is no need to reach question of privilege."). Thus, the court first addresses whether Plaintiff's requests for Defendant's mental health records seek relevant information within the scope of Rule 26(b)(1). In support, Plaintiff cites *Henry v. Hess*, 2012 WL 4856486, at *1 (S.D.N.Y. Oct. 12, 2012). Plaintiff's Memorandum (Doc. No. 22) at 24. In this case, plaintiff alleged, in a § 1983 action, claims for negligent hiring and inadequate training of a police officer who had engaged in a shooting, the circumstances of which were not described in the decision. *Henry*, 2012 WL 4856486, at **1–2. The court found that records regarding a "psychological 'fitness evaluation' " directed by the officer's police department "to determine whether an officer is 'fit for duty,' " were not within the psychotherapist-patient privilege as such evaluation was not for treatment purposes, and not confidential because the records were "disclosed to the police department." *Henry*, 2012 WL 4856486, at *1 (citing cases). Following an *in camera* review of the requested records, pursuant to the court's direction, the court also found the records contained information regarding the circumstances surrounding the shooting incident and that the defendant officer's psychological evaluation "may lead to the discovery of admissible evidence concerning what happened and why." *Id.* at *2 (citing *Scott v. Edinburg*,

101 F.Supp.2d 1017, 1022 (N.D.Ill.2000) (granting motion to compel defendant's post-shooting psychological evaluation records regarding defendant's fitness for duty as not privileged and relevant as including defendant's employment history and training as well as defendant's statements concerning the fatal shooting)). Similarly, in the instant case, the requested records may reveal past acts of unjustified aggressive conduct toward inmates by Defendant or, more pertinently, information concerning the alleged assault on Plaintiff as well as for possible impeachment purposes. Accordingly, the court finds that Plaintiff's requests seek relevant information. Based on Defendant's assertion of the psychotherapist-patient privilege together with Defendant's ambiguous response to Plaintiff's request for clarification as to the existence of the requested records and given Defendant's failure to deny that such responsive records may exist, by asserting, incorrectly, it's Plaintiff's obligation to do so, there is some reason to believe that such records may well exist. The court therefore addresses whether, as Plaintiff contends, the asserted privilege has been waived.

■ It is well-established that as regards the attorney-client privilege, failure to serve timely, *i.e.*, within 30 days of service of the request for production, a privilege log, in accordance with Rule 26(b)(5)(A)(ii), waives the privilege. *See Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 99 (W.D.N.Y.2011) (holding defendants' failure to timely serve privilege log waived any privilege that might otherwise be asserted) (citing caselaw). *See also Brown v. Dep't of Correctional Services*, 2011 WL 2182775, at **15–16 (W.D.N.Y. June 2, 2011). Here, Plaintiff's request for Defendant's mental health records was served January 28, 2014. Defendant's response, including assertion of the psychotherapist-patient privilege but without a privilege log, was served February 25, 2014. Despite Plaintiff's motion to compel, served May 7, 2014, Defendant has steadfastly refused to serve the required privilege log, provided ambivalent responses to Plaintiff regarding the existence of the requested records possibly subject to the asserted privilege arguing that Plaintiff had

failed to establish such existence and asserting a general lack of relevancy. Defendant's Memorandum at 23–24 ("[Plaintiff's] argument that defendant waived the privilege by not producing a privilege log ignores the fact that documents would first have to exist *and* be relevant ... subject to discovery before any obligation to produce a privilege log attaches.") (italics in original). As discussed, Discussion *supra*, at 160–61, these objections are meritless. Defendant has failed to unambiguously deny the records exist, conduct a reasonable search for such records, and to timely serve the required privilege log.

As noted, Defendant relies on *Sileo*, 2010 WL 811321, at *2, Defendant's Memorandum of Law at 23 n. 26, rejecting, in an excessive force case against defendant corrections officer, plaintiff's request for "psychological evaluations, progress reports," and records relating to defendant's "required participation of [*sic*] anger, occupational, or stress management," because the relation between plaintiff's excessive force claim and defendant's "unspecified mental health stress" or anger management issues ... "is too attenuated" ... [and] "speculative at best." *Id.* In reaching this conclusion, the court in *Sileo* balanced plaintiff's need for the requested discovery against the importance of the issues to which the request related in accordance with Fed.R.Civ.P. 26(b)(2)(c) ("Rule 26(b)(2)(c)"). *Id.* Here, in contrast, the Plaintiff's very specific allegations, including corroborative medical documentation, indicate that the sequence of events leading to Plaintiff's injuries could well have resulted from Defendant's assaultive reaction to Plaintiff's persistence in gaining intervention by the GED teacher to facilitate Plaintiff's request to use the lavatory, a response which could conceivably have been the product of Defendant's difficulty in anger control when confronted with an inmate's apparent affront to Defendant's authority. Thus, contrary to Defendant's contention, the holding in *Sileo* does not exclude discoverability of defendant's psychological and mental treatment as irrelevant in all circumstances, only that given the "unspecified" nature of the possible mental health issues in that case, the relationship of the requested records was "too

attenuated" and thus "speculative" to warrant discovery under the limitations upon discovery mandated by Rule 26(b)(2)(c). In contrast to the facts in *Sileo*, that such mental health records may well shed light on the motive for the alleged excessive force and how it occurred in this case further demonstrates the relevancy of Plaintiff's requests. *See Henry*, 2012 WL 4856486, at *2 (the requested "psychological evaluations may lead to the discovery of admissible evidence concerning what happened and why").

As discussed, Defendant alternatively contends that because Plaintiff has failed to establish the existence of the requested records, production of the requested records is unwarranted, thereby obviating the need to consider whether Defendant has, by refusing to explicitly deny the existence of such records and failing to serve a timely privilege log, waived Defendant's asserted psychotherapist—patient privilege to bar production. Defendant's Memorandum in Further Support at 9 ("Plaintiff's argument that defendant failed to produce a privilege log wholly ignores its principle [*sic*] obligation of first demonstrating that [responsive] records actually exist....") (italics in original); Defendant's Memorandum of Law in Support ("Plaintiff's argument ... ignores the fact that [the requested] documents would first have to exist *and* be relevant....."); Plaintiff's argument that Defendant waived the asserted patient-psychotherapist privilege is "specious and puts the proverbial cart before the horse," Defendant's Memorandum at 9. Defendant is incorrect. It is established that in responding to a request for document production pursuant to Rule 34(a), the responding "party must make a reasonable search of *all* sources *reasonably likely* to contain responsive documents." Baicker-McKee, Janssen, Corr, Federal Rules Handbook 2014, Thomson Reuters Westlaw at 893 citing *Tucker v. Am. Intern. Grp., Inc.*, 281 F.R.D. 85, 90–91 (D.Conn.2012) (responding party makes the search; requesting party has no right to search responding party's documents); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 247 F.R.D. 198, 204 (D.D.C.2008) (if a party has searched for, and been unable to locate re-

sponsive documents, it should so state). Accordingly, the court finds that the requested mental health records seek relevant material and Defendant's privilege in these records, assuming the existence of the records, has been waived. Defendant shall therefore file a statement that any mental health records subject to Plaintiff's request do not exist, or produce such records. *See Tequila Centinela, S.A.*, 247 F.R.D. at 204. For the reasons discussed, Discussion, *supra*, at 160–63, Plaintiff's motion directed to Plaintiff's request should be GRANTED.

### *Location of Depositions.*

█ Plaintiff noticed, on February 13, 2014, Kaczor Declaration ¶ 35, the oral depositions of Joanne Struck, the GED teacher involved in Plaintiff's case, David Haimes, a physician's assistant at Five Points, Carol Gardner, a nurse at Five Points, who examined and treated Plaintiff, and Defendant, as witnesses to be taken at a location in Ithaca, New York, located approximately 31 miles from the facility and where Plaintiff's counsel's office is located, on March 12, 2014, and March 13, 2014, respectively. Kaczor Declaration Exh. Y. Defendant objected to the location asserting the depositions must be conducted at the Five Points facility where Defendant and the witnesses are employed. Kaczor Declaration Exh. O at 2. Plaintiff maintains that conducting the depositions at the facility would interfere with the effectiveness of the depositions because of potential interruptions created by "timing and security concerns of the Facility." Kaczor Declaration ¶ 38, Exh. P (e-mail of February 20, 2014 from Kristina Moon to Kathleen Kaczor at 1). According to Plaintiff, based on Plaintiff's counsel's familiarity with the "movement restrictions" and security procedures in place at Five Points, a DOCCS maximum security prison, conducting the deposition at a mutually convenient location outside the facility will be more efficient as the potential for disruption and delay in completing the depositions based on unforeseeable security issues which may arise during the deposition if conducted at the facility would thereby be eliminated. Plaintiff's Reply Memorandum at 11 (citing caselaw). In support of Defendant's motion for an order directing the depositions be conducted at the facility, Defen-

dant points to the undue inconvenience to the witnesses and expense that would arise from being required to drive to Ithaca. Defendant's Memorandum at 4. More specifically, Defendant asserts that the daily operation of the facility would be hampered because it would be necessary to provide back-up coverage for these medical and teaching professionals as well as Defendant while away from the facility during travel to and from the off-site location proposed by Plaintiff compared to the travel by Plaintiff's counsel to and from the facility which would be required regardless of whether the depositions were conducted at the facility or at a different location. *Id.* In response, Plaintiff proposed a location for the noticed depositions in Seneca Falls, New York, located about 12 miles from Five Points. Plaintiff's Reply Memorandum at 11. Defendant, however, maintains Plaintiff's proposal continues to overlook that the greater burden of transporting the witnesses to a location even 12 miles away outweighs the potential for inconvenience to Plaintiff's counsel in conducting the deposition at the facility even should security constraints arise. Defendant's Memorandum In Further Support at 10.

█ Generally, the party noticing an oral argument pursuant to Fed.R.Civ.P. 30(b)(1) may designate the location. *Forauer v. The Vermont Store*, 2014 WL 2612044, at *5 (D.Vt. June 11, 2014) (quoting *United States v. One Gulfstream G–V Jet Aircraft Displaying Tail No. VPCES*, 304 F.R.D. 10, 11–12 (D.D.C.2014) (internal quotation marks and citations omitted)). However, in case of a dispute, courts exercise "substantial discretion" to determine the proper location for the deposition. *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 155 (S.D.N.Y.1997). In exercising such discretion, courts consider the cost, convenience and litigation efficiency. *See Buzzeo v. Board of Education, Hempstead*, 178 F.R.D. 390, 393 (S.D.N.Y.1998). Here, the cost of travel by Plaintiff's counsel from Ithaca to Seneca Falls may be less than that for travel by the three witnesses and Defendant from Five Points assuming the witnesses travel in separate vehicles. However, the relative inconvenience to DOCCS of requiring backup

staffing for the two medical staff members, Ms. Struck, and Defendant while away from the facility arising from their respective unavailability while traveling and waiting to be deposed at the proposed off-site location at Seneca Falls, is greater than requiring Plaintiff's counsel to travel to the facility. Although the potential for disruption of the depositions because of unpredictable security issues that may arise at the facility during the depositions is relevant to the factor of litigation efficiency, Plaintiff's assertion, based on counsel's experience, as to the probability of such disruption is lacking in sufficient particularization, and thus too speculative to support a finding that such disruption will necessarily occur in this case. In the event significant disruption does occur, Plaintiff may, pursuant to Fed.R.Civ.P. 30(d), suspend the deposition and renew Plaintiff's request that the court direct the suspended deposition, and any remaining depositions, be conducted at a location outside the facility as Plaintiff has requested. *See* Baicker–McKee, Janssen, Corr FEDERAL CIVIL RULES HAND-BOOK at 852 (party desiring to make motion to terminate or limit deposition may suspend deposition for the period of time necessary to make the motion (citing *McClelland v. Blazin' Wings, Inc.,* 675 F.Supp.2d 1074, 1081 (D.Colo.2009))). Defendant's motion is therefore GRANTED regarding the location of the four depositions previously noticed by Plaintiff.

### Defendant's Motion.

Defendant's motion requests the court deny Plaintiff's motions and direct the depositions noticed by Plaintiff be conducted at Five Points Correctional Facility. *See* Defendant's Memorandum (Doc. No. 25–6) at 24–25. As and to the extent the court has decided to grant Plaintiff's motion, Defendant's motion should be DENIED.

### Sanctions.

Contending that Defendant's failure to provide the requested discovery which is the subject of Plaintiff's motion was without sufficient justification, Plaintiff seeks, as a sanction pursuant to Fed.R.Civ.P. 37(a)(5)(A) ("Rule 37(a)(5)(A)"), $33,628.50 as reasonable attorneys fees for time expended by Plain-tiff's counsel in preparing and filing Plaintiff's motion. Moon Declaration ¶ 34 (136 hours for Kristina A. Moon, Esq., plus 23 hours for Betsy Hutchings, Esq. equaling 159 hours × $211.50/hour as permitted by PLRA § 803(d); 42 U.S.C. § 1997e(d)). Whether attorneys fee should be awarded under Rule 37(a)(5)(A) turns on whether Defendant's refusal to provide the requested discovery at issue on Plaintiff's motion was substantially justified or whether it would otherwise be unjust to make such an award. *See* Rule 37(a)(5). Defendant has not responded specifically to Plaintiff's request. Here, based on the court's consideration of Plaintiff's discovery requests and the asserted grounds for Defendant's refusal to provide the discovery requested, the court finds Plaintiff's request for attorneys fees has a colorable basis. For example, as discussed, Discussion, *supra,* at 141–44, Defendant's threshold contention that Defendant could not respond to Plaintiff's numerous document requests because Defendant lacked the prerequisite possession, custody or control over such documents, in the court's view, was untenable. Moreover, Defendant's repeated assertions that Plaintiff's requests lacked relevancy were found to be meritless as were Defendant's burdensomeness objections. *See* Discussion, *supra,* at 144–49 (relevancy), 150–53 (burdensomeness). Accordingly, Defendant shall file a response to Plaintiff's request for attorneys fees *within 14 days.* Plaintiff's reply shall be filed *within 14 days* thereafter. Oral argument shall be at the court's discretion.

### CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 20) is GRANTED in part, DENIED in part, and DISMISSED in part as moot without prejudice; Defendant's motion (Doc. No. 25) is GRANTED in part and DENIED in part.

SO ORDERED.