**Augusto RAMOS, Jr., et al., Plaintiffs,**

v.

**CARTER EXPRESS INCORPORATED, et al., Defendants.**

**Civil Action No. 5:12–CV–54.**

United States District Court, S.D. Texas, Laredo Division.

July 10, 2013.

Arnulfo Gonzalez, Jr., Attorney at Law, Laredo, TX, for Plaintiffs.

Phillip Tompkins Dearth, APL Limited, Scottsdale, AZ, Lynn S. Castagna, Castagna Scott LLP, Austin, TX, for Defendants.

**MEMORANDUM AND ORDER**

J. SCOTT HACKER, United States Magistrate Judge.

Pending before the Court is "Defendants Carter Express Incorporated and David Higley's Motion to Compel Production," (Dkt. No. 17), filed June 11, 2013. The underlying action stems from "a cycling accident that occurred in Webb County, Texas . . . in the pre-dawn hours," where Defendant Higley's "bobtail tractor" impacted the rear of Plaintiff Augusto Ramos, Jr.'s bicycle. (*Id.* ¶ 1). Because Defendants claim that "[t]he visibility and reflective nature of the bike, the related cycling equipment and [the] clothing have become a pivotal issue in the case," Defendants are seeking an order from the Court compelling the Plaintiffs "to produce the subject bicycle, related cycling equipment and clothing for a private examination and testing by Defendants." (*Id.* ¶¶ 2, 7).

Although Defendants' reconstruction expert was previously afforded an opportunity to "view and photograph the bike, the related cycling equipment, and [the] clothing," Defendants want to now "take temporary possession" of the items, "in order for their expert and consulting expert to conduct nondestructive testing and examine it in a setting with their own equipment." (*Id.* ¶ 3). And because "Plaintiffs and their expert have had unfettered access" to the items outside the presence of Defendants or their representatives, Defendants seek this same opportunity. (*Id.* ¶ 5). Defendants intend to return the items thirty days after receipt of them, and "have agreed to bear all reasonable costs associated with the receipt and return of the bicycle and related equipment and clothing." (*Id.*).

Plaintiffs have responded to Defendants' motion, focusing foremost on the fact that the discovery deadline in this case is July 12, 2013. (*See* Dkt. No. 19). Plaintiffs thus contend that "the recent request made by the Defendants for non-destructive testing · . . . is prejudicial" to them, because of the likelihood that any supplemental report resulting from these examinations would be received after the discovery deadline. (*Id.* at 3). Plaintiffs also state that "depending on the *testing results, nature of the testing, the pro-*

*tocols used* and the *methodology used*, it will be necessary for the Plaintiffs to be able to retain a new expert in the area of expertise that the Defendants['] testing results dictate or otherwise may require." (*Id.*). To avoid "re-opening discovery and re-opening the designation of additional experts or rebuttal experts," Plaintiffs oppose the motion.[1] (*Id.* at 4).

Federal Rule of Civil Procedure 34 governs the pretrial production and inspection of tangible materials in discovery, and authorizes a party to "serve on any other party a request within the scope of Rule 26(b): to produce and permit the requesting party ... to inspect, copy, test, or sample ... any designated tangible things...." Fed. R.Civ.P. 34(a)(1)(B). In turn, Rule 26(b) contemplates parties obtaining discovery "regarding any nonprivileged matter that is relevant to any ... claim or defense." Fed. R.Civ.P. 26(b)(1). "If the parties differ as to whether an inspection or test is appropriate, 'the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection.'" *Hunley v. Glencore Ltd., Inc.,* No. 3:10–CV–455, 2013 WL 1681836, at *3 (E.D.Tenn. April 17, 2013) (quoting *Scruggs v. Int'l Paper Co.,* 278 F.R.D. 698, 700 (S.D.Ga.2012)). However, the decision whether to allow testing, de-

structive and non-destructive testing alike, "rests within the sound discretion of the court." *Ostrander v. Cone Mills, Inc.,* 119 F.R.D. 417, 419 (D.Minn.1988).

Although courts have repeatedly applied a four-factor[2] test in determining whether to permit destructive testing, *see, e.g., Bostic v. Ammar's, Inc.,* No. 03–146–ART, 2011 WL 251009, at *3 (E.D.Ky. Jan. 26, 2011); *Conway v. Kaz Inc.,* No. 09–CV–10065–DT, 2009 WL 3698561, at *2 (E.D.Mich. Nov. 4, 2009); *Guerrero v. Gen. Motors Corp.,* No. 1:06–cv–01539–LJO–SMS, 2007 WL 3203014, at *2 (E.D.Cal. Oct. 29, 2007); *Mirchandani v. Home Depot, U.S.A., Inc.,* 235 F.R.D. 611, 613–14 (D.Md.2006), Defendants here seek to conduct non-destructive testing on the bicycle and related materials. The appropriate measure for determining whether the tests proposed by Defendants shall proceed therefore is to weigh "the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *See Hunley,* 2013 WL 1681836, at *3.

Defendants inform the Court that "[t]he visibility and reflective nature of the bike, the related cycling equipment and [the] clothing have become a pivotal issue in the case," and it appears as though the previously-taken photographs of these items do not

---

1. Although the Court is aware of, and shares, Plaintiffs' concerns regarding the upcoming discovery deadline and the delayed nature of the motion, the motion is nonetheless timely, as it comes before the discovery deadline. *See Marolf v. AyA Aguirre & Aranzabal S.A.,* No. 4:09CV3221, 2011 WL 6012203, at *4 (D.Neb. Dec. 1, 2011) (when the "discovery and deposition deadline was October 7, 2011," the plaintiff's request to perform destructive testing on September 15, 2011, was "timely made"); *White v. Cooper Tools, Inc.,* No. CIV. 06–4272, 2010 WL 1418244, at *2 (D.S.D. April 6, 2010) (relying on a state case in determining that "even as short a time as one month before trial for the motion to compel is not too late"). Additionally, as of this point, Defendants have not sought leave of the Court to untimely designate an expert or to disclose an untimely supplemental report, and thus the Court is hesitant to presume that any testing performed by Defendants' expert will necessitate a new rebuttal expert by Plaintiffs. Should either scenario become necessary, Plaintiffs can either (1) oppose Defendants' motion for leave to

modify their expert designation deadline, or (2) seek leave of the Court to untimely designate their own additional expert, and consideration of that motion would necessarily entail consideration of the present order.

2. The inquiries relevant to the destructive testing analysis are: "1) [w]hether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) [w]hether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) [w]hether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) [w]hether there are adequate safeguards to minimize the prejudice to the non-movant, particularly the movant's ability to present evidence at trial." *Mirchandani,* 235 F.R.D. at 614. The analysis of the third factor—whether there are any less prejudicial alternative methods of obtaining the evidence sought—necessarily involves inquiring into "whether there are any non-destructive alternative methods of testing." *Id.* at 616.

adequately portray their "reflective nature." The Court has no reason to doubt this assertion, as Plaintiffs have not argued otherwise. Given the significance of this issue to the determination of liability, the Court finds that the testing is both relevant and valuable "in the search for truth." Additionally, given that Defendants have represented that all testing will be non-destructive, there are no foreseeable dangers that could result from this testing. Although there are conceivable scheduling and financial burdens that could ensue, those burdens are less significant when compared with the possible significance of the proposed test results. Because the truth seeking function of the court outweighs the need for the speedy resolution of this dispute, Defendants shall be permitted to inspect and perform non-destructive testing on the "subject bicycle, related equipment and clothing."

▮ In addition, although Plaintiffs did not reference their desire to be present during the proposed testing in their motion, Defendants did state that "Plaintiffs' counsel has insisted he must be present during any examination of the bicycle and equipment." (Dkt. No. 17, ¶ 4). As such, the Court needs to address the issue. There appears to be a rather clear distinction forming between cases involving destructive testing and those involving non-destructive testing. Where courts have ordered materials to be subject to destructive testing, they almost unanimously allow the opposing party to bear witness to the inspection and testing, either in person or via another avenue, such as videotaping. *See Jeld–Wen, Inc. v. Nebula Glasslam Int'l, Inc.,* 249 F.R.D. 390, 395–98 (S.D.Fla.2008) (analyzing the issue in depth and concluding that a party must demonstrate "good cause" to "justify destructive testing ... outside the presence of [the opposing party]"); *see also Garcia v. Aartman Tranp. Corp.,* No. 4:08 cv 77, 2011 WL 665451, at *4 (N.D.Ind. Feb. 14, 2011) (permitting the defendants to videotape the destructive testing, independently view the test segments, or take advantage of other safeguards); *Bostic,* 2011 WL 251009, at *5 (concluding all parties should be present throughout the inspection process, and also allowing use of videotape and photography);

*White,* 2010 WL 1418244, at *4 (allowing plaintiffs' counsel and plaintiffs' expert to be present for all destructive testing, and to video record or photograph "as they deem appropriate"); *Conway,* 2009 WL 3698561, at *3 (authorizing plaintiff and her experts or representatives to view the defendant's testing); *Guerrero,* 2007 WL 3203014, at *5 (determining some of the safeguards should include "constant videotaping of the process ...; [and] specification of the procedures to be followed and the order in which they will be undertaken"); *Mirchandani,* 235 F.R.D. at 617 (noting that defendants would be allowed to attend the testing and mandating that all testing procedures be photographed); *Nugent v. Hercules Offshore Corp.,* No. Civ. A. 98–3060, 1999 WL 1277536, at *1–2 (E.D.La. Dec. 28, 1999) (finding the conditions of allowing the parties and both their experts to be present to be appropriate); *Spell v. Kendall–Futuro Co.,* 155 F.R.D. 587, 588 (E.D.Tex.1994) (in addition to mandating that defendant photograph the item before testing, allowing plaintiff, along with his counsel and experts, to be present to observe all testing). Such an outcome makes sense when one of the four factors courts are to consider in the determination is "[w]hether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial." *Mirchandani,* 235 F.R.D. at 614.

In contrast, when courts compel production of materials for non-destructive testing, they habitually refuse to allow the presence of an opposing party. *See Blundon v. Goodyear Dunlop Tires N. Am. Ltd.,* No. 11CV990S, 2012 WL 5473069, at *4 (W.D.N.Y. Nov. 9, 2012) (after considering that Federal Rules 26 and 34 "do not require the opponent's presence during the inspection of relevant material," determining that defendant could conduct the testing alone, but cautioning that "[f]ailure to return [the materials] as they were sent to defendant may result in an adverse instruction"); *Lopez v. Cooper Tire & Rubber Co.,* No. 3:11–cv–375–J–25JBT, 2011 WL 3035086, at *2 (M.D.Fla. July 25, 2011) (after plaintiff's concession, finding it "undisputed that Defendant should be allowed to obtain the evidence

for non-destructive testing at a facility of its choice, ... without any observation or videotaping by Plaintiff or anyone acting on his behalf during the testing."); *Cottrell v. Dewalt Industrial Tool Co.*, No. 09 cv 5306, 2009 WL 5213876, at *2 (N.D.Ill. Dec. 29, 2009) (concluding "[t]here is no basis to find that Plaintiff will be prejudiced if Defendant is allowed to conduct non-destructive inspection and testing outside the presence of Plaintiff's counsel," after considering the work product privilege and the consulting expert privilege); *Hajek v. Kumho Tire Co., Inc.*, No. 4:08CV3157, 2009 WL 2229902, at *4 (D.Neb. July 23, 2009) (finding no evidence "to justify requiring defendants' experts to ... perform such testing under plaintiffs' direct supervision and recording while plaintiffs' experts were not subject to such scrutiny."); *Diepenhorst v. City of Battle Creek, et.al.*, No.1:05–cv–734, 2006 WL 1851243, at *1 (W.D.Mich. June 30, 2006) (stating "[i]n general, each party should be free to engage in its own trial preparation unhampered by the intrusive supervision of the opposing party."); *Shoemaker v. Gen. Motors Corp.*, 154 F.R.D. 235, 236 (W.D.Mo. 1994) (agreeing that "the presence of plaintiff's counsel at the tests will reveal protected attorney work product and consulting expert information," and thus refusing to allow plaintiff during defendant's testing); *Fullone v. Goodyear Tire and Rubber Co.*, 107 F.R.D. 1, 2 (W.D.N.Y.1985) (stating that the plaintiff "has advanced no valid reason why defendant should be precluded from additional and private non-destructive examination and testing"). *But see Rattay v. Medtronic, Inc.*, No. 5:05CV177, 2007 WL 1417158, at *3 (N.D.W.Va. May 10, 2007) (because of "the circumstances of the case" and the fact that the "devices to be tested are the actual devices that had been implanted in and later removed from" the plaintiff, allowing the presence of a single individual at the defendant's testing); *Holmes v. J.M. Prods., Inc.*, No. 03–2190BV, 2005 WL 927172, at *4 (W.D.Tenn. Jan. 7, 2005) (although seemingly not contested, allowing all parties, counsel, and retained experts to be present for the testing).

In the underlying matter, this Court tends to agree with the case law supporting Defen-

dants' position that it should be entitled to perform non-destructive testing on the bicycle, related cycling equipment, and clothing outside of Plaintiffs' and their counsel's presence. However, while it is fairly common for a court to require plaintiffs to send evidence to a facility of defendants' choice for non-destructive testing, the undersigned has not yet been provided any information which would make him believe it would be prudent to do so in this case. Here, Defendants have not even informed the Court where the non-destructive testing would occur and have not provided any reason why their experts could not perform the procedures in Laredo, Texas. *See Adams v. Thyssenkrupp Safway, Inc.*, No. 2:09–cv–01342 JAM KJN, 2010 WL 2850769, at *4 (E.D.Cal. July 20, 2010) (allowing the transfer of the evidence to the defendant's site in California, or to "another location within the State of California that is agreeable to both parties," but stating that defendant provided no explanation why the evidence must be transported out-of-state); *cf. Blundon*, 2012 WL 5473069, at *3 (noting that "[d]efendant's forensic experts have a non-portable laboratory in Akron, Ohio."); *Lopez*, 2011 WL 3035086, at *1–2 (ordering the non-destructive testing at the facility of defendant's choice, where "specialized equipment and laboratory facilities" were available "at [the] [d]efendant's facility in Findlay, Ohio"); *Hajek*, 2009 WL 2229902, at *4 (finding that "the evidence in the record establishes that special equipment is needed to test and inspect the tires, and it is both unfeasible and unduly expensive to perform the appropriate testing and inspection at the law office in Kansas City."); *Nationwide Mut. Fire Ins. Co. v. Hamilton Beach*, No. 3–06–CV–2109–G, 2007 WL 1058219, at *1–2 (N.D.Tex. Apr. 9, 2007) (after being provided an affidavit by the defendant's engineer, concluding that the testing should be conducted at "defendant's testing facility in Glen Allen, Virginia," because "neither the laboratory nor most of the technical equipment in that laboratory [wa]s portable.").

Moreover, if the Court were to allow such testing, Plaintiffs argue that they may need additional experts or rebuttal experts. As such, it seems somewhat intuitive that Plain-

tiffs' experts may still need to conduct its own or additional non-destructive testing. Consequently, it stands to reason that Plaintiffs would likely be prejudiced if these items were lost, damaged, destroyed, or otherwise materially altered while being transported to and from Defendants' chosen location. *See Adams*, 2010 WL 2850769, at *4 (finding that both parties would need to conduct further testing and that "plaintiff would suffer particularized prejudice if the planks were lost, damaged, destroyed ... while being transported out of state by defendant.").

Of significance, while Defendants are willing to take full responsibility for the evidence in their possession, (*see* Dkt. No. 17, ¶ 7), neither party has proffered suggestions for procedures or safeguards the Court should impose to prevent any loss or damage to the evidence while it is in the custody of Defendants or in the custody of a third-party during shipping. *See Lopez*, 2011 WL 3035086, at *3 (because "no observation or videotaping" could be done by "anyone acting on [the] [p]laintiff's behalf," ordering the defendant to document the removal and shipment of the relevant tires); *Hajek*, 2009 WL 2229902, at *5 (requiring the defendants' expert to "document[ ] and photograph[ ]" the "condition of the tires and rims" upon receipt and return shipment). Further, some courts have even required specific procedures that address the "chain of custody" of the evidence while in the movant's temporary possession. *See Adams*, 2010 WL 2850769, at *4, *5 (in granting the plaintiff's protective order, the court included defendant's provision regarding "a documented chain of custody"); *Hajek*, 2009 WL 2229902, at *5 (the court specifically ordered plaintiffs' counsel to ship the evidence directly to the defendant's consulting expert and to have the evidence remain in the custody of that expert until it was shipped back to plaintiffs' counsel). Finally, since Defendants claim that "[t]he visibility and reflective nature" of the evidence has "become a pivotal issue," the Court is slightly concerned that the parties have not considered an appropriate remedy or sanction available to this Court if the evidence is lost or damaged while in the custody of Defendants or a third-party shipping company. *See Adams*, 2010 WL 2850769, at *4 (deter-

mining that the "plaintiff has a recourse should defendant lose, destroy, damage, or otherwise materially alter the pieces of scaffolding plank," mainly that he "may request that the court impose evidentiary sanctions for the destruction or spoliation of evidence."). Notably, the undersigned understands that the parties were unable to reach a settlement in this case and are in the process of getting ready for a trial. As such, if these items at issue are potentially material to the outcome in this case, the Court desires to minimize its risk in having to address future disputes between the parties regarding the handling of this evidence.

Accordingly, for the reasons stated above, "Defendants Carter Express Incorporated and David Higley's Motion to Compel Production" is GRANTED IN PART AND DENIED IN PART. As of now, Plaintiffs are ORDERED to make available at mutually agreed upon location in Laredo, Texas, the aforementioned "bicycle, related cycling equipment and clothing" to Defendants for non-destructive testing and inspection. If Defendants believe there are compelling reasons why this non-destructive testing needs to be conducted outside of Laredo, Defendants have until Monday, July 15, 2013, to bring those reasons to the attention of the undersigned. Notwithstanding where such testing is conducted, it is further ORDERED that Defendants will be allowed to conduct their non-destructive testing and inspection outside the presence of Plaintiffs and Plaintiffs' counsel. Defendants are ORDERED to conduct this testing within **30 days** of this order. Defendants are fully responsible for the items while in their temporary custody. Defendants shall bear all reasonable costs arising from this production. Plaintiffs ARE ENCOURAGED to adequately document or photograph the condition of these items before providing Defendants access to them.

Finally, the Court notes that Defendants' deadline to designate expert witnesses and disclose related reports was February 28, 2013. As such, depending on the results of Defendants' non-destructive testing, Defendants' obligation to supplement their experts' reports, and Plaintiffs' potential need for a rebuttal expert, the parties may need to file a

timely motion, setting out good cause, to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4). Since the case is near the cusp of the discovery deadline and there have already been some delays abating the discovery process in this matter, the parties are to confer and file a motion, if needed, to modify the scheduling order by **August 19, 2013.**

IT IS SO ORDERED.