DSM Dyneema, LLC v. Thagard, 2015 NCBC 112.

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| GASTON COUNTY | 13 CVS 1686 |

DSM DYNEEMA, LLC,

       Plaintiff,

v.

JAMES THAGARD, Ph.D.;
HONEYWELL SPECIALTY
MATERIALS, LLC; HONEYWELL
ADVANCED COMPOSITES, INC.; and
HONEYWELL INTERNATIONAL,
INC.,

       Defendants.

**ORDER AND OPINION ON
PLAINTIFF'S MOTION TO COMPEL
CONCERNING TESTING
PROTOCOLS[1]**

{1}    **THIS MATTER** is before the Court upon Plaintiff DSM Dyneema, LLC's ("Plaintiff") Motion to Compel Responses to Requests for Production of Documents and Things from Defendants Honeywell Specialty Materials, LLC, Honeywell Advanced Composites, Inc., and Honeywell International, Inc. (collectively, "Honeywell") (the "Motion" or the "Motion to Compel") in the above-captioned case. Having considered the Motion, briefs and submissions in support of and in opposition to the Motion, and arguments of counsel at a hearing on the Motion held August 24, 2015, the Court **GRANTS in part** and **DENIES in part** the Motion.

*Bell, Davis & Pitt, P.A., by Edward B. Davis, Kevin G. Williams, and Demitra Sourlis, and McCullough Ginsberg Montano & Partners LLP, by C. Dino Haloulos and Theodore McCullough, for Plaintiff DSM Dyneema, LLC.*

*Kirkland & Ellis LLP, by Daniel A. Bress, Craig Primis, Alexia Broncato, and John S. Moran, and Erwin, Bishop, Capitano, & Moss,*

---

[1] In recognition that both Plaintiff and Honeywell filed their supplemental briefs on this Motion under seal to protect their alleged trade secret information, and out of an abundance of caution, the Court elected to file this Order and Opinion on Plaintiff's Motion to Compel Concerning Testing Protocols under seal on December 18, 2015. As set forth in subparagraph (e) at p. 10–11 *infra*, the Court permitted Plaintiff and Honeywell an opportunity to advise whether the Order and Opinion contained confidential trade secret information that either contended should be redacted from a public version of this document. On December 21, 2015, both Plaintiff and Honeywell advised the Court that no redactions are necessary. Accordingly, the Court removes the "under seal" designation and files this Order and Opinion, without redactions, as a matter of public record.

*P.A., by Joseph W. Moss, Jr. and Lex M. Erwin, for Defendants Honeywell Specialty Materials, LLC, Honeywell Advanced Composites, Inc., and Honeywell International, Inc.*

*Ogletree, Deakins, Nash, Smoak & Steward, P.C., by Robert A. Sar, Phillip J. Strach, and J. Allen Thomas, for Defendant James Thagard, Ph.D.*

Bledsoe, Judge.

I.

BACKGROUND

{2}     The procedural and factual background of this case is recited in detail in *DSM Dyneema, LLC v. Thagard*, 2014 NCBC LEXIS 51 (N.C. Super. Ct. Oct. 17, 2014) and *DSM Dyneema, LLC v. Thagard*, 2015 NCBC LEXIS 50 (N.C. Super. Ct. May 12, 2015).  The facts and procedural history pertinent to the resolution of the present Motion are set forth below.

{3}     Plaintiff and Honeywell are competitors in the ballistic performance material production industry and have historically competed for United States Department of Defense contracts involving the development of fibers used in enhanced combat helmets ("ECH").  Plaintiff specifically developed its ECH designs for use in combat helmets manufactured by Ceradyne, Inc. ("Ceradyne").  In 2010, Honeywell hired Defendant Dr. James Thagard ("Dr. Thagard" and, collectively with Honeywell, "Defendants"), Plaintiff's former chief scientist and technical leader who had previously overseen Plaintiff's ECH program.  In February 2013, Ceradyne ended its relationship with Plaintiff and awarded an ECH contract to Honeywell.  Plaintiff's claims arise out of Defendants' alleged misappropriation of Plaintiff's trade secrets.

{4}     Plaintiff served its Second and Third Sets of Requests for Documents and Things (the "Requests") on Honeywell on May 7, 2014, and July 29, 2014, respectively.  Among other things, Plaintiff's Requests seek production of certain physical materials from Honeywell for inspection and testing.  It is undisputed that the material Plaintiff requests "constitute[] Honeywell's proprietary materials and information," (Pl.'s Br. Supp. Mot. to Compel 9), and that Plaintiff's proposed

testing contemplates destructive testing to samples of Honeywell's proprietary materials. (Pl.'s Br. Supp. Mot. to Compel 6, 9.)

{5} After the resolution of numerous motions relating to discovery, *see DSM Dyneema,* 2014 NCBC LEXIS 51 and *DSM Dyneema*, 2015 NCBC LEXIS 50, Honeywell served its responses and objections to the Requests on June 11, 2015. In its responses, Honeywell refused to produce its physical materials on various grounds, contending, in particular, that Plaintiff "has not identified what it intends to do with the material, the protocols that would govern any review and/or testing of the material, the relevance of any testing to the allegations in this case, and the person or persons who would be involved in examining and/or testing the material." (Honeywell's First Am. Resps. and Objections to Pl.'s Second Set of Doc. Reqs. ¶¶ 1–4, Honeywell 's First Am. Resps. and Objections to Pl.'s Third Set of Doc. Reqs. ¶ 1).

{6} Plaintiff filed the Motion to Compel on July 2, 2015, seeking an order compelling Honeywell to produce the physical materials Plaintiff had sought in the Requests. Briefing was completed on August 10, 2015, and the Court held a hearing on the Motion on August 24, 2015.

{7} The Court entered its first Order on the Motion to Compel on August 27, 2015 (the "August 27 Order"). In that Order, the Court concluded that (i) the parties should negotiate and have in place a mutually-agreeable chain of custody protocol before Honeywell should be required to produce the requested materials, (ii) to determine the relevance of Plaintiff's proposed testing protocols, the Court should receive supplemental briefing and submission of evidence focusing on how Plaintiff's testing is relevant to Defendants' alleged misappropriation of the trade secrets Plaintiff specifically identified in Exhibit A to Plaintiff's Supplemental Response to Defendant Honeywell's Interrogatory Number 1 ("Exhibit A"), and (iii) Plaintiff's proposed testing expert, Dr. Stuart Leigh Phoenix ("Dr. Phoenix"), is sufficiently independent of Plaintiff that he should be permitted to perform the testing of Honeywell's materials for Plaintiff. The Court set a supplemental briefing schedule concerning the relevancy of the proposed testing protocols,

imposed a schedule for negotiation of a chain of custody protocol,[2] and declined to award expenses or fees to Plaintiff. (*See generally* Order on Pl.'s Mot. to Compel [Revised], Aug. 27, 2015.)

{8}     Plaintiff filed its Supplemental Brief and Materials Regarding Relevance of Testing Protocols on September 8, 2015 ("Supplemental Brief"). All additional briefing on the Motion was completed on October 12, 2015. The Motion is now ripe for resolution.

II.

ANALYSIS

{9}     Plaintiff contends that its Requests are relevant because they "seek multiple progressions of Honeywell's materials so that Dr. Phoenix can analyze how the Honeywell material evolved in order to determine whether Honeywell used DSM trade secrets known to Dr. Thagard in order to improve and accelerate the development of [Honeywell's] ballistic material in the ECH Program." (Pl.'s Supp. Br. 1). As its primary support, Plaintiff argues that Dr. Phoenix's Supplemental Affidavit Re: Testing Protocols ("Supplemental Affidavit"), attached to Plaintiff's Supplemental Brief as Exhibit 1, "carefully describes how and why [Plaintiff's] proposed testing protocols for the Honeywell materials are relevant to the trade secrets at issue in this lawsuit, as set forth in Exhibit A." (Pl.'s Supp. Br. 1.)

{10}     Honeywell vigorously disagrees and argues that Plaintiff has still "not explained why its proposed testing is related to the alleged trade secrets that [Plaintiff] identified in Exhibit A" and, further, that the cost, expense and burden to Honeywell of the proposed testing "is severe and not justified." (Honeywell's Reply Submission 1.)

{11}     As an initial matter, the Court notes that Plaintiff's testing protocols seek to test Honeywell's unidirectional tapes (Section 1), molded panels (Section 2), and helmet inserts and shells (Section 3). It appears undisputed, however, that Plaintiff has not requested Honeywell to produce molded panels or helmet inserts and shells

---

[2] The parties subsequently advised the Court that they successfully negotiated a mutually satisfactory chain of custody protocol to govern the handling of Honeywell's proprietary materials in connection with any testing.

for inspection and testing in its Requests. Accordingly, the Court agrees with Honeywell that Honeywell has no obligation under the North Carolina Rules of Civil Procedure to produce for inspection and testing either molded panels or helmet inserts and shells. *See generally* N.C. R. Civ. P. 34 (discussing production of requested documents and things).

{12}  It also appears undisputed that Plaintiff has not sought or received the appropriate authorizations from the United States military to conduct testing of these materials, which are of military-grade. Because the parties agree that military authorization is required as a matter of law before testing may be conducted, the Court concludes that, for this additional reason, consideration of Plaintiff's proposed testing protocols contained in Section 2 (molded panels) and Section 3 (helmet inserts and shells) is not properly before the Court at this time. *See, e.g., Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 62 (1984) (internal quotation marks and citation omitted) (declining to enter order that would serve as a "purely advisory opinion which the parties might, so to speak, put on ice to be used if and when the occasion might arise.").

{13}  The Court therefore denies Plaintiff's Motion to the extent it seeks to compel the production of Honeywell's molded panels and helmet inserts and shells or the approval of Sections 2 and 3 of Plaintiff's proposed testing protocols, without prejudice to Plaintiff's right to renew the Motion concerning these materials, and with respect to Sections 2 and 3 of the proposed testing protocols, should the Motion become ripe for decision at some time in the future.

{14}  In contrast, the Court concludes that the Motion as to the production of Honeywell's unidirectional tapes and the approval of Section 1 of Plaintiff's proposed testing protocols are properly before the Court.

{15}  Under North Carolina Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" N.C. R. Civ. P. 26(b)(1). Additionally, under Rule 34, a "party may serve on any other party a request . . . to inspect and copy, test, or sample any . . . tangible things which constitute or contain matters

within the scope of Rule 26(b) and which are in the possession or custody or control of the party upon whom the request is served[.]"  N.C. R. Civ. P. 34(a).

{16}  "A fundamental requirement of Rule 26, and the focus of the Court's analysis here, is that the information sought to be discovered must be 'relevant' to the pending action.  The test of relevancy under Rule 26 is not the same as the more stringent relevancy requirement of Rule 401 of the North Carolina Rules of Evidence."  *Wachovia Capital Partners, LLC v. Frank Harvey Inv. Family L.P.*, 2007 NCBC LEXIS 7, at *31 (N.C. Super. Ct. Mar. 5, 2007); *see* N.C. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *see also Adams v. Lovette*, 105 N.C. App. 23, 29, 411 S.E.2d 620, 624, *aff'd*, 332 N.C. 659, 422 S.E.2d 575 (1992).  "Moreover, a determination that information is relevant for discovery purposes does not necessarily mean that the information is admissible at trial.  The latter determination is made according to Rule 401 of the Rules of Evidence."  *Wachovia Capital Partners,* 2007 NCBC LEXIS 7, at *31–32; *see also Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 314, 248 S.E.2d 103, 106 (1978).  "To be relevant for discovery purposes, the information sought need only be 'reasonably calculated' to lead to the discovery of relevant evidence admissible at trial."  *Wachovia Capital Partners,* 2007 NCBC LEXIS 7, at *32 (citing N.C. R. Civ. P. 26(b)(1)).[3]

{17}  In the context of inspection and testing, the Court notes that a "party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure."  *Hunley v. Glencore Ltd., Inc.*, No. 3:10-CV-455, 2013 U.S. Dist.

---

[3] The Court recognizes the conflict with the Court's instruction to Plaintiff in the August 27 Order to explain how the results of each proposed test would constitute relevant evidence under North Carolina Rule of Evidence 401.  For purposes of deciding the Motion, however, the Court applies the standard for relevance under N.C. R. Civ. P. 26(b)(1).

LEXIS 54259, at *7 (E.D. Tenn. Apr. 17, 2013) (internal quotation marks and citations omitted).[4]  Where, as here, "the parties differ as to whether an inspection or test is appropriate, the court must balance the respective interests by weighing the degree to which the proposed inspection [and testing] will aid in the search for truth against the burdens and dangers created by the inspection [and testing]."[5] *Ramos v. Carter Express, Inc.*, 292 F.R.D. 406, 408 (S.D. Tex. 2013); *see also, e.g.*, *Hunley*, 2013 U.S. Dist. LEXIS 54259, at *7; *Scruggs v. Int'l Paper Co.*, 278 F.R.D. 698, 700 (S.D. Ga. 2012).  "The decision whether to allow testing . . . falls within the sound discretion of the court."  *Hunley*, 2013 U.S. Dist. LEXIS 54259, at *7; *see also* N.C. R. Civ. P. 26(b)(1a) ("The . . . extent of use of the discovery methods . . . shall be limited by the court if it determines that: . . . the discovery is unduly burdensome or expensive . . . .").

{18}   Plaintiff contends that the proposed testing will allow Dr. Phoenix "to observe the 'progressive evolution' of the Honeywell material, including its interconnected properties, and how the interconnected properties 'converged with and ultimately mimicked [Plaintiff's] material.'"   (Pl.'s Surreply 3) (quoting Supplemental Affidavit ¶¶ 2, 3.)  In particular, Plaintiff asserts that "testing the various iterations of the Honeywell material that were manufactured at different points in time will allow him to determine the 'concomitant speed of that evolution of the Honeywell material.'"  (Pl.'s Surreply 3) (quoting Supplemental Affidavit ¶ 5).

---

[4] The Court may look to federal case law interpreting the Federal Rules of Civil Procedure in evaluating Plaintiff's Motion here.  *See Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) ("Decisions under the federal rules are . . . pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules.").

[5] The Court notes that destructive testing is "testing that destroys or irreversibly alters evidence" that would otherwise be admitted at trial.  *Hunley*, 2013 U.S. Dist. LEXIS 54259, at *8.  *See, e.g.*, *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 614 (D. Md. 2006) (in products liability case, evidence sought to be tested was part of the allegedly defective ladder that caused the injury).  When "destructive testing" is contemplated, the federal district courts often apply a more stringent test.  *See, e.g.*, *Mirchandani*, 235 F.R.D. at 613–14.  Here, although Plaintiff's proposed testing is destructive in the sense that once a particular sample is tested, it will be destroyed and can never be tested again, the proposed testing is not destructive in its classic form because the testing presents no danger of destroying or irreversibly altering evidence that will be sought to be admitted at trial.  The Court therefore concludes that this balancing test constitutes the appropriate analysis in the circumstances presented here.  *See Ramos*, 292 F.R.D. at 408; *Hunley*, 2013 U.S. Dist. LEXIS 54259, at *8.

In summary, Plaintiff argues that testing will determine whether the Honeywell material "(1) mimics that of DSM; (2) began mimicking that DSM material after Honeywell hired Dr. Thagard, and (3) evolved at a rate that was more accelerated than would typically be expected." (Pl.'s Surreply 5.) This evidence, Plaintiff argues, citing *GE Betz, Inc. v. Conrad*, __ N.C. App. __, __, 752 S.E.2d 634, 649 (2013) and *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App. 49, 620 S.E.2d 222 (2005), may constitute circumstantial evidence of misappropriation, which is relevant to, and may support, Plaintiff's claim for misappropriation of trade secrets. As a result, Plaintiff contends that the testing satisfies Rule 26's requirement that it be "reasonably calculated" to lead to the discovery of relevant evidence admissible at trial.

{19} Honeywell, on the other hand, argues that Plaintiff has not made the required showing of relevance, contending that even if the proposed testing showed that Honeywell's material development evolved at a rate more accelerated than reasonably expected after Dr. Thagard was hired, that fact, standing alone, would not constitute circumstantial evidence of misappropriation and, at most, would reach only "the outer fringes of relevance." (Honeywell's Sur-surreply 3.) *See, e.g.*, *Modular Techs., Inc. v. Modular Sols., Inc.*, No. COA06-813, 2007 N.C. App. LEXIS 1592, at *12 (July 17, 2007) (unpublished) (holding that evidence arising to "no more than an assertion of *post hoc, ergo propter hoc*" is insufficient to establish misappropriation). Honeywell argues further that even if Plaintiff's proposed testing is minimally relevant, that limited relevance does not outweigh the burden the testing would impose on Honeywell – in particular, that Honeywell's proprietary materials and information would be in its competitor's possession for as long as the six months Plaintiff has estimated the proposed testing will take.

{20} Having considered the briefs, arguments and other submissions provided by the parties, and balancing the search for truth against the burdens and dangers created by the proposed testing, the Court concludes, in the exercise of its discretion, that Plaintiff's proposed testing of unidirectional tapes pursuant to Section 1 of the proposed testing protocols is relevant to Plaintiff's misappropriation

claim and reasonably calculated to lead to the discovery of admissible evidence in these circumstances. Accordingly, the Court concludes that the proposed testing of unidirectional tapes should be allowed to proceed in strict conformity with Section 1 of Plaintiff's proposed testing protocols.

{21} The Court takes seriously Honeywell's concerns that the proposed testing will cause it undue cost, expense, and burden, but the Court concludes that the risks to, and burdens on, Honeywell are substantially mitigated through the protections provided by the three tiers of confidentiality protections available under the Protective Order in this litigation, the restrictions Plaintiff and Dr. Phoenix have agreed upon to ensure Dr. Phoenix's independence from Plaintiff, and Plaintiff's agreement to permit Honeywell's attorneys and experts to attend all proposed testing. Thus, the Court concludes that permitting the proposed testing of unidirectional tapes to go forward under Section 1 of the proposed testing protocols is appropriate, upon a careful balancing of the search for truth against the burdens and dangers created by the testing in these circumstances. *See Ramos*, *Hunley*, *supra*.

{22} The Court notes that when it grants a motion to compel, Rule 37(a)(4) requires the Court to order "the party . . . whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified . . . ." N.C. R. Civ. P. 37(a)(4). In the August 27 Order, the Court found that Honeywell's opposition to the Motion to Compel was substantially justified and therefore did not find that an award of expenses or fees to Plaintiff warranted or appropriate. The Court's conclusion has not changed since the August 27 Order, and the Court therefore concludes that each party should bear its own costs and fees in connection with the Motion.

III.

CONCLUSION

{23} **WHEREFORE**, the Court, in the exercise of its discretion, hereby **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Compel and **ORDERS** as follows:

a. Honeywell shall provide full and complete responses and production in response to DSM's Second and Third Sets of Requests for Documents and Things no later than January 25, 2016.

b. Plaintiff's proposed testing of unidirectional tapes shall be permitted to proceed in strict conformity with Section 1 of Plaintiff's proposed testing protocols.

c. Plaintiff's proposed testing of molded panels and helmet inserts and shells pursuant to Sections 2 and 3, respectively, of Plaintiff's proposed testing protocols shall not be permitted to proceed at this time, without prejudice to Plaintiff's right to renew the Motion should Plaintiff properly seek production and testing of these materials in discovery and the issue otherwise becomes ripe for decision.

d. Honeywell's attorneys and experts shall be permitted to attend all testing of Honeywell's materials permitted pursuant to this Order and Opinion.[6]

e. To avoid disclosure of either party's confidential or trade secret information through the publication of this Order and Opinion, the Court instructs each party to advise the Court promptly by email if the party contends that the Order and Opinion should be redacted to avoid the disclosure of the party's confidential or trade secret information, and, if so, to file under seal no later than December 23, 2015, any

---

[6] Although DSM has agreed to permit Honeywell's attorneys and experts to attend the proposed testing, the parties dispute whether Honeywell has a legal right to have its attorneys and experts in attendance. The Court, in the exercise of its discretion, concludes that Honeywell should have that right in these circumstances. *See, e.g., Jeld-Wen, Inc. v. Nebula Glasslam Int'l, Inc.*, 249 F.R.D. 390, 398 (S.D. Fla. 2008).

proposed redactions of any confidential or trade secret information contained in this Order and Opinion.[7]

**SO ORDERED**, this the 18th day of December, 2015.[8]

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
  for Complex Business Cases

---

[7] As noted at footnote 1 above, the parties advised the Court on December 21, 2015 that redactions were not necessary.

[8] This Order and Opinion was originally filed under seal on December 18, 2015. This public version of the Order and Opinion is being filed on December 21, 2015. Because this public version of the Order and Opinion does not contain any substantive changes from the version filed under seal as to constitute an amendment, and to avoid confusion in the event of an appeal, the Court has elected to state the filing date of the public version of the Order and Opinion as December 18, 2015.